523 S.E.2d 273

**In re Petition to Remove John G. SIMS as Prosecuting Attorney for Logan County, West Virginia.**

**No. 25957.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Nov. 5, 1999.

---

James M. Cagle, Esq., Charleston, West Virginia, Attorney for Petitioners.

PER CURIAM:

The issue in this opinion is whether the respondent, John G. Sims, should be removed from the office of prosecuting attorney for Logan County, West Virginia. The three-judge court in effect held that the petitioners established their case for removal on at least some of the grounds asserted but failed to grant the relief requested. We reverse.

The respondent was elected to the office of prosecuting attorney of Logan County for a fixed term during the general election held in November 1996 and began serving his term in January 1997. He previously served as counsel to the Logan County Board of Education.

On August 27, 1998, nine elected officials, Alvis Porter, Rick Grimmett, Arthur Kirken-

doll, Danny Godby, Willie Akers, Paul Hardesty, Bob Wolfe, Greg Wooten, and Jerry Godby, along with eighty-one adult residents of Logan County joined in a petition to remove Sims from office. On September 2, 1998, this Court entered an administrative order appointing Judge Arthur Recht, Judge Alan Moats, and Senior Judge Daniel McCarthy to the three-judge court (panel) "for the purpose of taking all actions necessary and authorized by W.Va.Code, 6–6–7[.]"[1] The panel permitted the petitioners to file an amended petition,[2] which was designated first amended petition and contains sixteen charges. The petition charges the respondent with official misconduct, malfeasance in office, incompetence and neglect of duty, and other acts and omissions which subject him to removal from office. The petition specifically charges as follows:

5. The acts of official misconduct, malfeasance in office, incompetence and neglect of duty upon which the petitioners rely are:

a. On the 7th day of November, 1997, the Respondent Sims filed with the Circuit Court of Logan County the sworn affidavit which is ... false and was filed by the Respondent with the intent to deceive;

b. Further, Respondent Sims assisted the adverse parties against his former client by submitting the said affidavit, in contravention of Rules 1.8 and 1.9 of the Rules of Professional Conduct;

c. On the 20th day of April, 1998, the Respondent Sims filed the sworn affidavit which is ... false and was filed by the Respondent with the intent to deceive;

d. In the month of April 1998, the Respondent exceeded his duly allotted budget, leaving the office of Prosecuting Attorney without sufficient funds to meet the office payroll or otherwise to properly operate the office. In order to fund the

---

1. W.Va.Code § 6–6–7(c) (1985) states in pertinent part:
 The chief justice of the supreme court of appeals shall without delay designate and appoint three circuit judges within the state, not more than one of whom shall be from the same circuit in which the petition is filed and, in the order of such appointment, shall designate the date, time and place for the convening of such three-judge court, which date and time shall not be less than twenty days from the date of the filing of the petition.

2. The petitioners listed in the first amended petition are Alvis Porter, Rick Grimmett, Arthur Kirkendoll, Glen Adkins, Paul Hardesty, and Bob Wolfe, all elected officials in Logan County.

shortfall, the County Commission of Logan County was forced to pre-allocate future funds to the prosecutor's office. The Respondent's budget statement and attendant affidavit . . . was improper and/or neglectfully and incompetently prepared to the absolute damage and detriment of the county, its funds, the required budgetary process and the efficient operation of the county's business as contemplated and required by West Virginia Code § 7-7-7;

e. The Respondent has engaged in a pattern of making improper public statements about pending cases, about defendants, and about prospective cases and prospective defendants:

(i) On March 17, 1998, when Petitioners Grimmett, Porter and other public officials approached the Logan County Commission to inquire about their right to hire outside counsel to represent them in that the Respondent had been making accusations against them and issuing Freedom of Information requests and subpoenas to them for records which were in fact public records, Respondent Sims told the Logan Banner newspaper that "The reason they don't trust me is that they can't control me *and most criminals don't trust prosecutors.*" The above comment is both libelous *per se* and contrary to the Rules of Professional Conduct as embodied in Rules 3.6 and 3.8;

(ii) On March 16, 1998, Respondent Sims signed a criminal complaint charging Petitioner Alvis Porter with violating West Virginia Code § 61-5-27, a felony, which charge was subsequently dismissed by a Circuit Judge sitting by designation. Approximately three (3) weeks earlier, in late February 1998, Respondent Sims told the Managing Editor of the Logan Banner newspaper that he was going to charge Mr. Porter with a crime, a violation of Rules 3.6 and 3.8 of the Rules of Professional Conduct. When these same charges were filed, Respondent Sims provided extensive interviews to television and newspaper reporters in further violation of said Rules;

(iii) On October 17 and 19, 1997, Respondent Sims told the Logan Banner newspaper that an investigation from the State Tax Department, identified by Sims as a "special tax commissioner," was ongoing into practices of the Logan County Assessor's Office because the county had "one of the highest number of exonerations in the state." Said comment is false and libelous and was intended by the Respondent to discredit Petitioner Rick Grimmett, who is the Logan County Assessor;

(iv) On March 18, 1998, Respondent Sims told the Logan Banner newspaper that he could not comment on a case before the grand jury because of the requirement of secrecy; however, the Respondent then stated that the case was one in which Petitioner Alvis Porter "had a personal interest, albeit indirectly . . . ." Said comment is a violation of Rule 6 of the West Virginia Rules of Criminal Procedure and of Rule 3.6 of the Rules of Professional Conduct;

(v) On June 23, 1998, just before the start of jury selection in a murder trial in the Circuit Court of Logan County, Respondent Sims told the Logan Banner newspaper that "We have tried two men involved with these murders already. This will be a very similar trial with similar witnesses testifying. We anticipate a similar guilty verdict." The above statement is a violation of Rule 3.6 of the Rules of Professional Conduct;

f. The Respondent Sims was elected and is employed as a full-time prosecutor. As such, he is precluded by West Virginia Code § 7-7-4 from engaging in the private practice of law. Contrary to this statutory restriction, the Respondent engages in the private practice of law;

g. The Respondent has used office personnel for private work for his personal benefit on the County's time and in the County's office, thereby expending public resources for his personal benefit;

h. The Respondent has operated his office for political purposes by targeting for investigation those whom he believes to be his political enemies by:

(i) Issuing subpoenas for improper purposes and making subpoenas returnable at phantom proceedings, thereby committing the tort of abuse of process;

(ii) Instituting improper criminal charges which were thereafter dismissed, thereby committing the tort of malicious prosecution;

(iii) Instituting improper civil actions in violation of Rule 11 of the West Virginia Rules of Civil Procedure;

i. In January 1998, during a phone conference with the Logan County Commission, the Respondent misled the Commission as to the actual purpose for hiring the late Hassell Butcher as an investigator in the office of Prosecuting Attorney, knowing that his purpose was to have Mr. Butcher work on a case against Mr. Butcher's former employer;

j. The Respondent required an employee of the Prosecutor's Office to telephone the Logan County Clerk specifically to ask that the said Clerk hire the Respondent's wife, Wendy Sims, and to tell the Clerk that if he did not hire his wife, the Clerk would not receive any "favors" from the Prosecutor's Office;

k. In 1997, Respondent Sims, when angry, made a threat to Logan Magistrate Danny Wells in the Magistrate's office and in the presence of another that he would more vigorously prosecute the Magistrate's son on pending criminal charges after being informed by the Magistrate that he had dismissed a case because the Prosecutor had not timely appeared for a scheduled hearing;

l. On various dates between July 1, 1992 and June 30, 1995, Respondent Sims submitted duplicate vouchers to the Circuit Court of Logan County and to the Public Defender Services for payments associated with court-appointed cases. Between July 1995 and January 5, 1998, and including the time after his election to the office of Prosecuting Attorney, the Public Defender Services forwarded demands of repayment for such duplicate payments which Respondent Sims ignored. The acts of duplicate billing and refusal to respond to demands for repayment [on] the part of Respondent Sims constitute larceny and fraud;

m. On June 24, 1998, the Respondent did knowingly make false representations to Circuit Judge Roger L. Perry of Logan County in the case of *State v. Robert Adams*, 97–F–62P, when the Respondent denied making statements to the press which were attributed to him in quotes contained in the Logan Banner. . . .

n. Shortly after the initial Petition to remove was filed in this matter, the Respondent told his staff that if Brian Abraham came into the Office of Prosecuting Attorney, he would "fire anyone if he comes in and is not put out." Brian Abraham is a practicing attorney in Logan, West Virginia, who also signed as a Petitioner seeking to remove the Respondent from office. Mr. Abraham handles criminal cases, therefore it is necessary for him to enter the Office of Prosecuting Attorney, a public office located in the county courthouse, from time to time. Further, firing and the threat to fire a public employee for refusing to commit an improper act is itself improper as an abuse of trust and misuse of authority;

o. The wife of the Respondent is one Lorenda L. Bailey, Social Security No. 233–06–6061. She has had her driver's license revoked for Driving Under the Influence on at least two occasions. After having her license revoked on the second occasion, she applied for a Social Security number (265–06–3415), using the name of Wendy Louellen Bailey. She thereafter applied for, and received, a new driver's license using the new Social Security number to hide her true identity.

Department of Motor Vehicles records indicate at least one request for a hearing made on her behalf by this Respondent, which request was denied. . . .

The acts of Respondent's wife constitute criminal law violations of the following statutes: 42 U.S.C. § 408(a)(6); W.Va. Code §§ 17B–4–1(4), 17B–4–2 and 17B–4–3.

The acts and omissions of the Respondent constitute violations of his duties under West Virginia Code § 7–4–1, and both

neglect and/or participation in violations of West Virginia Code §§ 17B–3–12(a)(4), 17B–4–3, 17B–4–4, and 18 U.S.C. § 4.

p. In late January 1996 or early February 1996, the Respondent committed child abuse in violation of West Virginia Code § 61–8D–3. The victim was the Respondent's infant son, Czar Ian–Hendry Bailey.

The three-judge panel heard the charges and received the evidence which was offered in support of and in opposition to the respondent. The panel made several findings of fact. The panel found that the explanation the respondent gave for filing the affidavits was "nonresponsive, evasive, equivocal, ambiguous and not worthy of a public official." However, the panel determined "the filing of either of these affidavits does not constitute clear and convincing evidence that the respondent has committed any act which justifies his removal" from office. The panel found the budget "contained an erroneous calculation in that it failed to factor the payment of benefits to which employees of the Prosecuting Attorney's office were entitled." The budget shortfall was determined to be "an error of omission which did not result in the loss or misappropriation of any taxpayer funds and is not a ground for removal."

The panel found the allegations "that the Respondent abused the powers of his office as chief law enforcement officer of Logan County by rewarding his friends and allies and punishing his foes and political enemies[ ]" to not be supported by clear and convincing evidence. The panel also found that the submission of duplicate vouchers to the Public Defender Services was "a coalescence of imperfect office practices and procedures in regard to the office of Public Defender Services; of lost records and of weak memories[ ]" that did not "constitute[ ] clear

and convincing evidence to support a request for the Respondent's removal."

In the final analysis, the panel concluded the respondent violated two of the numerous allegations the petitioners presented. The panel went on to explain that these violations do not warrant removal from office but rather suspension from the practice of law and repayment of funds. However, prior to discussing the violations, the panel made it clear "the Respondent should not construe the absence of an order of removal as an endorsement of his conduct in office." The order specifically states the respondent's "tenure in office is marked with arrogance, thoughtlessness, irresponsibility, and mean spiritedness, all of which are repugnant characteristics for any public officer, but are not grounds for removal." The panel then discussed the violations. The panel concluded the respondent violated Rules 3.6[3] and 3.8[4] of the West Virginia Rules of Professional Conduct in that he "use[d] the device of pre-hearing publicity to materially prejudice adjudicative proceedings." This, said the panel, warranted some suspension from the practice of law. A copy of the panel's order was referred to the Lawyer Disciplinary Board for resolution of this matter.

The panel further concluded "the ends of justice would be sufficiently served if the Respondent would be required to repay all sums which he obtained while engaging in outside employment in the amount of One Thousand Four Hundred Dollars ($1,400)." This conclusion was reached because the respondent served from January 1997 through February 1998 as town attorney for Man, West Virginia while he was simultaneously serving as a full-time prosecutor; the outside employment violates W.Va.Code § 7–7–4(c). The respondent was ordered to repay the

---

**3.** West Virginia Rule of Professional Conduct 3.6 speaks to trial publicity and states in part:

(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

**4.** West Virginia Rule of Professional Conduct 3.8 speaks to the special responsibilities of a prosecutor and states in pertinent part:

The prosecutor in a criminal case shall:

(e) exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6.

sheriff of Logan County $1,400. It is from this order the petitioners appeal.

On appeal, the petitioners allege the panel erred: (1) by not removing the respondent from office after concluding some of the charges were established by satisfactory proof; and (2) in refusing to consider the evidence regarding whether the respondent had committed child abuse. The petitioners argue the panel's findings and conclusions are not supported by clear and convincing evidence.

We note at the outset of our analysis that we are hampered and troubled by the respondent's total failure to respond on appeal. The respondent failed to file a responsive brief and neither he nor his counsel appeared or participated in oral argument.

■ First, we will dispense with the child abuse argument. The petitioners allege the panel refused to allow presentation of evidence of child abuse on the part of the respondent due to the fact that the abuse allegedly occurred before the respondent took office. In reading the record presented to this Court, we find the panel received avowal testimony from Bill Bailey, the respondent's father-in-law, regarding a visit he and his wife had with their young grandson, Czar Bailey, two years prior to the hearing. Mr. Bailey testified he videotaped scarring and bruises on Czar left from a beating he received from the respondent. Mr. Bailey's testimony was offered to authenticate the videotape, which the panel subsequently received. On cross-examination, Mr. Bailey admitted he did not take the video, his wife did, and that neither of them had contacted the West Virginia Department of Health and Human Resources, a prosecuting attorney's office or the police. He also admitted that his wife, Czar's grandmother, had a felony conviction for embezzlement, a crime that involves dishonesty,[5] and that she had been treated for depression.

We believe the panel committed no error in failing to consider this charge. If Czar's grandparents had been concerned about their grandchild's welfare, they could have taken the videotape evidence and their grandson to the proper officials at the time the abuse allegedly occurred. Instead, they waited two years and, even at that time used the videotape for purposes other than to protect the child. Furthermore, the respondent asserts there is animosity between him and his wife's parents. If the allegations had been timely alleged and proved and the respondent had been convicted of child abuse, it would have been proper for the trial panel to consider the child abuse charges. That is not the case and the panel properly dismissed this charge.

■ Next, we will consider whether the panel erred by not removing the respondent from office after concluding that several of the charges were established by satisfactory proof. The panel concluded the respondent "use[d] the device of pre-hearing publicity to materially prejudice adjudicative proceedings" in violation of the Rules of Professional Conduct. The panel also concluded the respondent engaged in outside employment while serving as a full-time prosecutor in violation of W.Va.Code § 7–7–4(c) (1996). However, after making these conclusions, the panel chose to discipline the respondent with remedies and sanctions which were not available to the panel under the statute, suspension and repayment of funds. W.Va.Code § 6–6–7 (1985) controls this proceeding and states in pertinent part:

> (a) Any person holding any county, school district or municipal office, ... the term or tenure of which office is fixed by law, whether the office be elective or appointive, except judges of the circuit courts, may be removed from such office in the manner provided in this section for official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality or for any of the causes or on any of the grounds provided by any other statute.

> (c) The charges shall be reduced to writing in the form of a petition duly verified by at least one of the persons bringing the same, and shall be entered of record by

---

**5.** *See Gaudin v. Shell Oil Co.,* 132 F.R.D. 178 (1990) (embezzlement is a crime which involves dishonesty).

the court, or the judge thereof in vacation, and a summons shall thereupon be issued by the clerk of such court, together with a copy of the petition, requiring the officer or person named therein to appear before the court, at the courthouse of the county where such officer resides, and answer the charges on a day to be named therein[.]

The court, or judge thereof in vacation, or in the case of any multi-judge circuit, the chief judge thereof, shall without delay forward a copy of the petition to the supreme court of appeals and shall ask for the impaneling or convening of a three-judge court consisting of three circuit judges of the state. The chief justice of the supreme court of appeals shall without delay designate and appoint three circuit judges within the state, ... and, in the order of such appointment, shall designate the date, time and place for the convening of such three-judge court[.]

Such three-judge court shall, without a jury, hear the charges and all evidence offered in support thereof or in opposition thereto and upon satisfactory proof of the charges **shall** remove any such officer or person from office and place the records, papers and property of his office in the possession of some other officer or person for safekeeping or in the possession of the person appointed as hereinafter provided to fill the office temporarily. Any final order either removing or refusing to remove any such person from office shall contain such findings of fact and conclusions of law as the three-judge court shall deem sufficient to support its decision of all issues presented to it in the matter. (Emphasis added).

"It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. W.Va. Public Employees Ins. Bd.,* 171 W.Va. 445, 300 S.E.2d 86 (1982). W.Va.Code § 6-6-7 is mandatory and provides only for removal from office. The sanctions chosen by the panel in lieu of removal do not comply with the statute and the panel's decision is, therefore, inconsistent with the law. As a result, we must now apply the law to the facts of this case. The standard of review regarding questions of law is stated in syllabus point 1 of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995), which states, "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."

This court has previously said, "Section 7, Article 6, Chapter 6 Code, [1985], expressly requires that to remove a person from office the charge against him must be established by satisfactory proof." Syllabus Point 3, *Smith v. Godby,* 154 W.Va. 190, 174 S.E.2d 165 (1970). The satisfactory proof standard was later clarified in syllabus point 9 of *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975), and reiterated in syllabus point 3 of *Matter of Boso,* 160 W.Va. 38, 231 S.E.2d 715 (1977), which states, "To warrant removal of an official pursuant to Code, [1985], § 6-6-7, clear and convincing evidence must be adduced to meet the statutory requirement of satisfactory proof." In other words, when charges of official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality are proved by clear and convincing evidence against a person holding a county office, W.Va.Code § 6-6-7 (1985) mandates removal from office.

In the case at bar, the panel first concluded as a matter of law that "there is no clear and convincing evidence that the Respondent should be removed from the office of Prosecuting Attorney of Logan County." The panel then analyzed the statute and determined they "would have little difficulty in granting a less drastic remedy than removal." Finally, the panel detailed the violations. However, in so doing, they failed to provide us with any analysis regarding whether the respondent's conduct amounts to "official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality[.]" By side-stepping this analysis, the panel concluded that some of the charges filed against the respondent were established by clear and convincing proof but yet evaded the mandatory consequence of so finding, that being removal from office. Succinctly stated, if the respondent's conduct fits within

the framework of W.Va.Code § 6–6–7, then the respondent must be removed from office.

 We realize it can be difficult to pigeonhole specific offenses into the broad categories provided in the statute. The definitions of "misconduct in office" and "malfeasance" often overlap and some jurisdictions include malfeasance in the definition of official misconduct. For example, in *Mid–South Indoor Horse Rac. v. Tenn. State Rac.*, 798 S.W.2d 531, 538 (Tenn. Ct. App.1990), the Court of Appeals of Tennessee states that "[official misconduct] includes (1) doing an act unlawful in itself (malfeasance), (2) doing an otherwise lawful act in an unlawful manner (misfeasance), and (3) failing to perform an act required by law or the duties of the office (nonfeasance)." (Citations omitted). This Court has previously distinguished between the two terms by giving them the following definitions. " 'Misconduct in office is any unlawful behavior by a public officer in relation to the duties of his office, wilful in character.' Point 2, Syllabus, *Kesling v. Moore and Cain*, 102 W.Va. 251, 135 S.E. 246 [1926]." Syllabus Point 3, *Daugherty v. Day*, 145 W.Va. 592, 116 S.E.2d 131 (1960). "Malfeasance in office has been defined as 'the doing of some act which is positively unlawful or wrongful or an act which the actor has no legal right to do, or as any wrongful conduct which affects, interrupts or interferes with the performance of official duty.' *Daugherty v. Ellis*, 142 W.Va. 340, 97 S.E.2d 33 (1956)." *Kemp v. Boyd*, 166 W.Va. 471, 485, 275 S.E.2d 297, 306–07 (1981).

The panel concluded that the respondent repeatedly made improper extra-judicial statements, and that conclusion is supported by specific findings of fact. The panel found the respondent made an improper remark in a public meeting on March 17, 1998, in reference to other county officials, including Alvis Porter (Clerk of the Circuit Court), against whom the respondent had caused a criminal complaint to be filed the previous day. The respondent commented during the meeting, "The reason they don't trust me is that they can't control me and most criminals don't trust prosecutors." Prior to filing the criminal complaint against Mr. Porter, the respondent informed the managing editor of the Logan Banner newspaper that he was working on a possible indictment of Mr. Porter and the editor should watch his facsimile machine when the charges were made. The facsimile message containing the charges was indeed sent to the newspaper.

The panel found the respondent had informed the Logan Banner in October 1997 that a "Special Tax Commissioner," an investigator from the State Tax Department, was probing the practices of the assessor's office because of the high number of tax exonerations. The panel also found that on June 23, 1998, immediately prior to the commencement of jury selection in a murder trial, the Logan Banner published an article which contained the following quotation: "We have tried two men involved with these murders already. This will be a very similar trial with similar witnesses testifying. We anticipate a similar verdict." This quotation was attributed to the respondent. These findings were based on the testimony of the editor and a reporter for the newspaper.

After thoroughly reviewing the record, we believe the panel properly found by clear and convincing evidence that the respondent used pre-hearing publicity to prejudice adjudicative proceedings. This conduct constitutes malfeasance and official misconduct in that it is wrongful conduct which violates the Rules of Professional Conduct and affects, interrupts, and interferes with the performance of official duty. It is also unlawful willful behavior by a public officer which relates to the duties of his office.[6]

The fact that the respondent engaged in outside employment while serving as a full-time prosecuting attorney constitutes misconduct. The respondent admitted he was employed as attorney for the town of Man while he was also serving as full-time prosecutor

---

6. This behavior is unlawful behavior even though it violates the Rules of Professional Conduct rather than a statute. Article VIII, Section 3 of the West Virginia Constitution states in part, "The [supreme] court shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to ... practice and procedure, which shall have the force and effect of law."

**222**

for Logan County. He thereby admitted he committed the act specifically prohibited by W.Va.Code § 7-7-4(c). The panel's finding on this charge is obviously based on clear and convincing evidence. This conduct is unlawful willful behavior by a public officer which relates to the duties of his office.

After finding these charges were established by satisfactory proof, the panel had only one option available to them, removal from office. However, the panel chose instead to recommend suspension from the practice of law and to order repayment of funds, both remedies which were not available to them. In applying West Virginia law to the facts of this case, we find the panel erred in making this final decision.

In order to comply with the mandate of removal provided in W.Va.Code § 6-6-7 (1985), we hereby reverse the decision of the three-judge panel and order that Respondent Sims immediately be removed from the office of prosecuting attorney for Logan County. W.Va.Code § 6-6-7(d) (1985) further provides that when a final decision regarding removal is made by this Court, the vacancy shall be filled "in the manner provided by law for such office." In this case, W.Va.Code § 3-10-8 (1991) controls.[7]

Reversed.

Justice McGRAW, deeming himself disqualified, did not participate in the decision in this case.

Judge RISOVICH, sitting by temporary assignment.

Justice SCOTT did not participate.

**7.** W.Va.Code § 3-10-8 (1991) states in pertinent part:

Any vacancy occurring in the office of prosecuting attorney, sheriff, assessor or county surveyor shall be filled by the county commission by appointment of a person of the same political party as the officeholder vacating the office, and the appointed person shall hold the office until the next general election is certified, or until the completion of the term if the term ends on the thirty-first day of December following the next general election. Such vacancy shall be filled by election for the unexpired term if the unexpired term is greater than one year.