574 S.E.2d 795

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**John G. SIMS, an Active Member of the West Virginia State Bar, Respondent.**

No. 28473.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2002.

Decided Nov. 4, 2002.

Concurring and Dissenting Opinion of Chief Justice Davis Dec. 5, 2002.

Charles M. Love, III, Esq., Michael J. Halaiko, Esq., Special Disciplinary Counsel, Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorney for Complainant.

H. John Rogers, Esq., New Martinsville, West Virginia, Attorney for Respondent.

Justice McGRAW, deeming himself disqualified, did not participate in the decision of this case.

Judge O'HANLON sitting by special assignment.

PER CURIAM:

In this disciplinary proceeding, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board (Hearing Panel) recommends that this Court suspend the law license of the respondent, John G. Sims, and assess the costs of the proceeding against him. The recommendation follows Sims' removal from the office of prosecuting attorney for Logan County by this Court in *In re Sims*, 206 W.Va. 213, 523 S.E.2d 273 (1999) (*Sims I*), and is based on the Hearing Panel's conclusion that Sims violated West Virginia Rules of Professional Conduct 3.6,[1] 3.8,[2] and 8.4[3] prior to and following the circuit court's caution to refrain from improper behavior. We believe Sims should be reprimanded and pay the costs of the disciplinary proceeding.

## I.

## FACTS

The Hearing Panel bases its recommendation upon many of the same facts which

---

**1.** West Virginia Rule of Professional Conduct 3.6(a) states, "A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

**2.** West Virginia Rule of Professional Conduct 3.8 states in pertinent part, "The prosecutor in a criminal case shall: (e) exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or asso-

ciated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6."

**3.** West Virginia Rule of Professional Conduct 8.4 states in pertinent part, "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (d) engage in conduct that is prejudicial to the administration of justice[.]"

provided the foundation for the removal proceeding in which Sims was removed by this Court from the elected office of prosecuting attorney for Logan County. Those facts were discussed in detail in *Sims I, supra.* The only facts that we need to enumerate in this opinion are those which we did not previously consider. After the three-judge panel entered its order but before this Court filed its opinion, Russell Rick Grimmett, assessor of Logan County, filed a petition for a writ of prohibition in the Circuit Court of Logan County against Sims seeking to prevent Sims from investigating the practices of the assessor's office regarding property tax exonerations or presenting evidence to the grand jury. The circuit court found that a conflict of interest existed between the two offices and awarded the writ.

In its order, the trial court noted that it was concerned "regarding the release of new[s] stories about the grand jury proceedings[.]" The court thereupon strongly cautioned Sims that he should refrain from making extrajudicial statements to the press regarding grand jury matters. Nonetheless, articles were subsequently printed in The Williamson Daily News and in The Logan Banner wherein Sims was directly quoted as accusing the assessor of forgery, illegal reduction of property taxes, and fraud. Based upon Sims' apparent flagrant disregard for the court's admonishment against making extrajudicial statements, Grimmett filed a motion for contempt against Sims. Following a hearing on the matter, the circuit court found that Sims' behavior violated West Virginia Rules of Professional Conduct 3.6 and 3.8. However, the court dismissed the motion because civil contempt was not alleged; the special prosecutor was ordered to "expand her investigation to determine whether charges of criminal contempt are warranted

against the Respondent for actions including allegations of disclosure of Grand Jury information in violation of Rule 6 of the Rules of Criminal Procedure."

Even though the three-judge panel failed to remove Sims from office, the panel concluded that Sims' behavior was "so flagrant" that it "warrant[ed] some suspension from the practice of law." Consequently, the panel referred the case to the Lawyer Disciplinary Board for resolution. The entirety of Sims' behavior was submitted to special counsel for the Office of Disciplinary Counsel. Following an investigation, the Investigative Panel issued a statement of charges against Sims alleging he violated Rules 3.6, 3.8, and 8.4. The matter was then brought before the Hearing Panel upon stipulations. The Office of Disciplinary Counsel and Sims stipulated and submitted for consideration the transcript and testimony adduced during the removal proceeding; the order of the three-judge panel; the opinion of this Court, *Sims I;* the transcript and testimony adduced along with the court's order in the prohibition proceeding; and the transcript and testimony adduced along with the court's order in the contempt proceeding.

The Hearing Panel found that while Sims served as prosecuting attorney, he "repeatedly made extrajudicial statements that he knew or should have known would have a substantial likelihood of materially prejudicing an adjudicative proceeding." The Hearing Panel also found that following his removal from the investigation involving the assessor's office, Sims continued on at least two occasions to give interviews to the press. In both newspaper articles, Sims is quoted as publicly accusing the assessor of forgery, illegal reduction of property taxes, and fraud.[4]

---

4. The June 10, 1999 article which was printed in The Williamson Daily News, *Prosecutor accuses assessor of fraud*, states in part:

Logan County's chief law enforcement officer claims he has point-blank proof that Logan Assessor Rick Grimmett is signing off on bogus taxpayer documents and costing the county hundreds of thousands of dollars in tax revenues each year.

Logan Prosecutor John Sims revealed hundreds of documents Tuesday obtained from Grimmett's office which, he claims, clearly shows definitive proof that the assessor is illegally decreasing property taxes on political allies throughout Logan County.

In some cases, added Sims, taxpayer signatures have been forged without their knowledge.

"We've had several people who have testified they've never signed a document, or have signed a blank document," he said. "Furthermore there are scads of people out there living in homes worth hundreds of thousands of dol-

After making these findings of fact, the Hearing Panel concluded that both aggravating and mitigating factors existed in this case. The Hearing Panel believed it was significant that Sims "held a position of public trust—that of Prosecuting Attorney—at the time of the misconduct and that his misconduct involved a pattern of repeated offenses." Along this same vein, the Hearing Panel believed it was significant that notwithstanding the fact that the three-judge panel held his behavior had violated the rules, and after he had been cautioned by the supervising circuit judge, Sims flagrantly repeated the improper behavior. The Hearing Panel also concluded that Sims' removal from office as prosecuting attorney was "a substantial sanction" which was a mitigating factor. The Hearing Panel was not persuaded that removal from office alone was a sufficient sanction under the circumstances. Therefore, the Hearing Panel recommends to this Court that Sims' license be suspended for ninety days and that he be required to pay the costs of the proceedings.

## II.

### STANDARD OF REVIEW

 " 'A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.' Syl. pt. 3, *Commit-*

tee on Legal Ethics v. McCorkle, 192 W.Va. 286, 452 S.E.2d 377 (1994)." Syllabus Point 2, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995).

Syllabus Point 3, *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995).

### III.

### DISCUSSION

 Rule 3.7 of the West Virginia Rules of Lawyer Disciplinary Procedure states that "[i]n order to recommend the imposition of discipline of any lawyer, the allegations of the formal charge must be proved by clear and convincing evidence." There is no question or dispute that the allegations in this case were proved by clear and convincing evidence. The parties stipulated the facts and the Board submitted to this Court copies of the latest newspaper articles which quote statements made by Sims. Sims does not argue that he did not make the public statements or commit the acts complained of; rather, he argues that his case should be referred back to the three-judge panel for a decision regarding whether sanctions beyond removal from office are warranted. In our review of the West Virginia Code and the Rules, we find that neither provides for such a procedure. We reiterate that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984). Trial courts and three-judge panels simply lack the power or jurisdiction to reprimand a lawyer or to suspend or annul a lawyer's license to practice law.[5]

---

lars only paying taxes on property tax assessments of $20,000 or $30,000.

Sims said his office has found fraud in "every avenue" of its investigation into the assessor's requests for exoneration of erroneous assessments.

These same quotations appeared in the June 11, 1999 article which was printed in The Logan Banner.

**5.** W.Va.Code § 51–1–4a (1945), the Bylaws of the West Virginia State Bar, and the Judicial Reorga-

nization Amendment to the West Virginia Constitution, Article VIII, clearly contemplate that legal ethics concerns must be resolved by this Court rather than circuit courts. *See Carey v. Dostert,* 170 W.Va. 334, 337, 294 S.E.2d 137, 139–40 (1982) ("[A] license to practice [law] may only be granted by this Court and may be annulled only by us. ... A trial court that discovers attorney misconduct must complain to the Legal Ethics Committee, By–Laws, Article VI, § 1, § 4 (paragraph 2).") (Citations omitted).

■ In his brief submitted to this Court, counsel for Sims concedes that Sims should have been removed from office, but he argues that no further sanctions should be imposed because Sims' actions were protected by free speech and prosecutorial immunity. Counsel stresses that "although he may not have comported himself as one might expect prosecutors to do, *still* his heart was pure. In his eyes, he was fighting entrenched political corruption. As has been noted at several places above, there is nothing in the record to indicate that Mr. Sims was anything other than a young, unexperienced, *and* crusading prosecuting attorney."

■ The Board argues that Sims' license should be suspended, in part, because "lawyers holding public office [are held] to a higher standard of conduct." Syllabus Point 3 of *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989), states, "Ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." The Board believes that Sims' conduct demonstrated a pattern of blatant disregard for Rules 3.6 and 3.8 both before and after judicial officers instructed him that his behavior was prejudicial and unethical. The Board argues that knowingly and repeatedly violating Rules 3.6 and 3.8 falls squarely within the conduct Rule 8.4 aims to prohibit.

In *Sims I,* this Court found that the conduct complained of here constitutes malfeasance and official misconduct; in other words, Sims persistently and deliberately used pre-hearing publicity to prejudice adjudicative proceedings. This violates Rules 3.6(a) and 3.8(e). Sims' knowing and repeated violation of these rules falls within the ambit of Rule 8.4. We further note that we have not previously considered the statements given by Sims to two local newspapers wherein he accused the assessor of forgery, illegal reduction of property taxes, and fraud.

After Sims was cautioned to stop making extrajudicial statements, he nevertheless deliberately proceeded to do exactly what he had been cautioned by the trial court to stop doing. The statements he gave to the press approximately a month after he was ordered to appoint a special prosecutor to investigate the assessor's office had a substantial likelihood of materially prejudicing the special prosecutor's ability to investigate and prosecute any wrongdoing. The statements also had a substantial likelihood of materially prejudicing the assessor's ability to defend any forthcoming charges and receive a fair adjudication of the same. We simply cannot condone this conduct. The statements made by Sims during the investigation are unfair to the assessor not only because the statements could prevent a subsequent fair jury trial, but also because they publicly malign the assessor and at the same time deny him any forum in which to respond to defend himself.

■ This Court has said,

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

Syllabus Point 4, *Office of Lawyer Disc. Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998). Except for the last two instances, Sims' conduct was sanctioned by removal from office. We believe that removal of a lawyer from an elected office is an effective, dramatic, and powerful punishment which serves as a "deterrent to other members of the Bar." This Court has made it very clear that:

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline im-

posed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

In the final analysis, Sims' deliberate practice and pattern of repeatedly making extrajudicial statements which had a substantial likelihood of materially prejudicing adjudicative proceedings is clearly an aggravating factor to be considered by this Court in imposing a sanction. On the other hand, his removal from the office of prosecuting attorney for this misconduct must in fairness be considered a mitigating factor. Forfeiture of a public office and removal therefrom is a harsh and drastic sanction indeed.

We, therefore, conclude that under all the circumstances of this case, including the fact that Mr. Sims was removed from office, a public reprimand and payment of the costs incurred in this proceeding [6] are appropriate and adequate sanctions.

Public Reprimand and Costs.

DAVIS, Chief Justice, concurring, in part, and dissenting, in part:

(Filed Dec. 5, 2002)

In this lawyer disciplinary matter, the Hearing Panel Subcommittee (hereinafter referred to as "the Panel") concluded that the respondent, John G. Sims (hereinafter referred to as "Mr. Sims"), violated Rules 3.6, 3.8 and 8.4 of the West Virginia Rules of Professional Conduct. The majority opinion agreed with this finding and held that "[t]here is no question or dispute that the allegations in this case were proved by clear and convincing evidence." The Panel recommended that this Court suspend the law license of Mr. Sims for ninety days and assess the costs of the proceeding against him. Unfortunately, the majority opinion rejected the Panel's recommendation to suspend Mr.

Sims' law license. Instead, the majority concluded that Mr. Sims should simply be reprimanded and required to pay the costs of the disciplinary proceeding. For the reasons set out below, I concur in the decision to impose costs against Mr. Sims. I dissent from the majority's decision to reject the Panel's recommendation of a ninety-day suspension of Mr. Sims' law license.

### A. Mr. Sims' Conduct Was Egregious

This Court has recognized "that attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics of the West Virginia State Bar v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). The majority's decision to not suspend Mr. Sims' law license constitutes an abandonment of this Court's duty to reassure the public that we will not tolerate egregious conduct by lawyers that undermines public trust in the legal profession.

In making the determination not to suspend Mr. Sims' law license, the majority failed to list all of the facts and circumstances forming the basis of the Panel's recommendation. The majority acknowledged that the Panel's recommendation was based "upon many of the same facts which provided the foundation for the removal proceeding in which Sims was removed by this Court from the elected office of prosecuting attorney for Logan County." The majority, however, decided that "[t]he only facts that we need to enumerate in this opinion are those which we did not previously consider." Consequently, the majority merely recites only those facts surrounding Mr. Sims' improper use of the media to prejudice cases pending before a grand jury. I strongly suggest that the majority chose to omit all relevant facts in an attempt to legitimize its decision to not suspend Mr. Sims' law license.

Unlike the majority, I will fully outline the improper conduct that Mr. Sims engaged in while holding the office of Logan County

---

**6.** West Virginia Rule of Lawyer Disciplinary Procedure 3.15 states in pertinent part, "When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the Panel or the Court finds the reimbursement will pose an undue hardship on the lawyer."

Prosecutor and upon which the Panel relied to recommend the suspension of his law license. The following conduct by Mr. Sims, relevant to the instant proceeding, was set out in *In re Sims*, 206 W.Va. 213, 215–217, 523 S.E.2d 273, 275–277 (1999) (per curiam), as follows:

[1]. On the 7th day of November, 1997, the Respondent Sims filed with the Circuit Court of Logan County the sworn affidavit which is ... false and was filed by the Respondent with the intent to deceive;

. . . .

[2]. On the 20th day of April, 1998, the Respondent Sims filed the sworn affidavit which is ... false and was filed by the Respondent with the intent to deceive;

. . . .

[3]. The Respondent has engaged in a pattern of making improper public statements about pending cases, about defendants, and about prospective cases and prospective defendants:

(i) On March 17, 1998, when Petitioners Grimmett, Porter and other public officials approached the Logan County Commission to inquire about their right to hire outside counsel to represent them in that the Respondent had been making accusations against them and issuing Freedom of Information requests and subpoenas to them for records which were in fact public records, Respondent Sims told the Logan Banner newspaper that "The reason they don't trust me is that they can't control me and most criminals don't trust prosecutors." The above comment is both libelous per se and contrary to the Rules of Professional Conduct as embodied in Rules 3.6 and 3.8;

(ii) On March 16, 1998, Respondent Sims signed a criminal complaint charging Petitioner Alvis Porter with violating West Virginia Code § 61–5–27, a felony, which charge was subsequently dismissed by a Circuit Judge sitting by designation. Approximately three (3) weeks earlier, in late February 1998, Respondent Sims told the Managing Editor of the Logan Banner newspaper that he was going to charge Mr. Porter with a crime, a violation of Rules 3.6 and 3.8 of the Rules of Professional Conduct.

When these same charges were filed, Respondent Sims provided extensive interviews to television and newspaper reporters in further violation of said Rules;

(iii) On October 17 and 19, 1997, Respondent Sims told the Logan Banner newspaper that an investigation from the State Tax Department, identified by Sims as a "special tax commissioner," was ongoing into practices of the Logan County Assessor's Office because the county had "one of the highest number of exonerations in the state." Said comment is false and libelous and was intended by the Respondent to discredit Petitioner Rick Grimmett, who is the Logan County Assessor;

(iv) On March 18, 1998, Respondent Sims told the Logan Banner newspaper that he could not comment on a case before the grand jury because of the requirement of secrecy; however, the Respondent then stated that the case was one in which Petitioner Alvis Porter "had a personal interest, albeit indirectly...." Said comment is a violation of Rule 6 of the West Virginia Rules of Criminal Procedure and of Rule 3.6 of the Rules of Professional Conduct;

[4]. The Respondent has operated his office for political purposes by targeting for investigation those whom he believes to be his political enemies by:

. . . .

(i) Issuing subpoenas for improper purposes and making subpoenas returnable at phantom proceedings, thereby committing the tort of abuse of process;

(ii) Instituting improper criminal charges which were thereafter dismissed, thereby committing the tort of malicious prosecution;

(iii) Instituting improper civil actions...

. . . .

[5]. In 1997, Respondent Sims, when angry, made a threat to Logan Magistrate Danny Wells in the Magistrate's office and in the presence of another that he would more vigorously prosecute the Magistrate's son on pending criminal charges after being informed by the Magistrate that he had dismissed a case because the Prosecutor had not timely appeared for a scheduled hearing;

[6]. On various dates between July 1, 1992 and June 30, 1995, Respondent Sims submitted duplicate vouchers to the Circuit Court of Logan County and to the Public Defender Services for payments associated with court-appointed cases. Between July 1995 and January 5, 1998, and including the time after his election to the office of Prosecuting Attorney, the Public Defender Services forwarded demands of repayment for such duplicate payments which Respondent Sims ignored. The acts of duplicate billing and refusal to respond to demands for repayment [on] the part of Respondent Sims constitute larceny and fraud;

[7]. On June 24, 1998, the Respondent did knowingly make false representations to Circuit Judge Roger L. Perry of Logan County in the case of *State v. Robert Adams*, 97–F–62P, when the Respondent denied making statements to the press which were attributed to him in quotes contained in the Logan Banner. . . .

Mr. Sims engaged in the above conduct as an elected official. Such conduct was deemed to justify his removal from office. *See In re: Sims.* However, for lawyer disciplinary purposes, the majority has determined that this same conduct warrants only a reprimand. To me, this is an unacceptable result. There is simply no justification for permitting Mr. Sims' ability to practice law to go unimpeded after he engaged in such egregious conduct as a public official. Moreover, the majority decision is inconsistent with this Court's holding in syllabus point 3 of *Committee On Legal Ethics of West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989), wherein we held that "[e]thical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." *See also Committee on Legal Ethics of the West Virginia State Bar v. White*, 189 W.Va. 135, 428 S.E.2d 556 (1993) (lawyer was prosecuting attorney who pled guilty to possession of cocaine and had his law license suspended for two years); *Committee on Legal Ethics of the West Virginia State Bar v. Boettner*, 188 W.Va. 1, 422 S.E.2d 478 (1992) (lawyer was state senator who pled guilty to evading payment of federal income taxes and had his law license sus-

pended for three years); *Committee on Legal Ethics of West Virginia State Bar v. Grubb*, 187 W.Va. 608, 420 S.E.2d 744 (1992) (lawyer was judge who was convicted in federal court of criminal charges and had his law license annulled); *Committee on Legal Ethics of the West Virginia State Bar v. Moore*, 186 W.Va. 127, 411 S.E.2d 452 (1991) (lawyer pled guilty to criminal acts that grew out of his position as governor and had his law license annulled); *Committee On Legal Ethics of West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989) (lawyer was prosecuting attorney and former mayor who pled guilty to possession of cocaine and had his law license suspended for three years).

The implication of the majority opinion is simple: A lawyer who holds public office can be assured that, if the lawyer engages in egregious conduct that undermines the integrity of the legal profession and the administration of justice, the lawyer's license will not be adversely affected. This proposition insults the public and casts grave doubt regarding the willingness of this Court to demand that lawyers remain faithful to the Rules of Professional Conduct.

In view of the foregoing, I concur in part and dissent in part.