614 S.E.2d 705

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Kevin A. WADE, A Member of the West Virginia State Bar, Respondent.**

**No. 31613.**

Supreme Court of Appeals of West Virginia.

Submitted April 27, 2005.

Decided May 26, 2005.

---

Lawrence J. Lewis, Chief Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, West Virginia, Attorney for the Complainant.

Kevin A. Wade, Welch, West Virginia, No Appearance by Respondent.

PER CURIAM:

This lawyer disciplinary proceeding against Kevin A. Wade (hereinafter referred to as "Mr. Wade") was brought to this Court by the Office of Disciplinary Counsel (hereinafter referred to as the "ODC") on behalf of the Lawyer Disciplinary Board (hereinafter referred to as the "Board"). The Hearing Panel Subcommittee (hereinafter referred to as the "HPS") determined that Mr. Wade had violated various West Virginia Rules of Professional Conduct and recommended that Mr. Wade's license to practice law be annulled.[1] This Court originally refused the recommendations of the HPS. However, based upon the ODC's arguments to this Court,[2] the record designated for our consid-

---

1. For additional recommendations by the Board, see *infra*, Section I.F., *Disposition of Disciplinary Proceeding*.

2. Mr. Wade did not submit a brief to this Court. The case was submitted on the ODC's brief after Mr. Wade failed to respond to letters requesting whether he desired to appear for oral argument before this Court.

eration,[3] and the pertinent authorities, we now accept the recommendations made by the HPS and conclude that Mr. Wade's law license should be annulled.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Wade was admitted to the practice of law on May 21, 1985. For all times relevant to this action, he practiced in Welch, West Virginia, located in McDowell County. Mr. Wade's prior disciplinary proceedings include a July 20, 1994, admonishment by the Lawyer Disciplinary Board Investigative Panel for lack of diligence, failure to respond to disciplinary counsel, and failure to have a written agreement for a contingent fee. He was also admonished by this Court on April 24, 2002, for preparing instruments giving his wife substantial gifts from a client. The current disciplinary matters before this Court include misconduct toward clients, third parties, and the ODC. As a result of Mr. Wade's failure to cooperate during the disciplinary process, the facts concerning the complaints as set forth by the ODC were deemed admitted by the HPS and are summarized below.

### A. Complaint of Melvin E. Prevento

Mr. Prevento contacted Mr. Wade on October 5, 1999, regarding an accident he suffered at a local establishment. During this meeting, Mr. Prevento provided Mr. Wade a copy of his medical bills and, at Mr. Wade's request, executed a medical authorization so that Mr. Wade could obtain his medical records. Mr. Wade told Mr. Prevento that he would review the medical records to determine the viability of Mr. Prevento's case. Mr. Wade and Mr. Prevento met on several occasions. Mr. Prevento attempted, unsuccessfully, to meet with Mr. Wade on several more occasions and also attempted to contact him by phone without success. More than seventeen months after his initial contact

with Mr. Prevento, Mr. Wade had never requested Mr. Prevento's medical records, had never conducted an investigation, and had never requested an accident report.

Mr. Prevento filed an ethics complaint with the ODC, a copy of which was mailed to Mr. Wade. Two follow-up letters were sent by ODC requesting a response from Mr. Wade. Mr. Wade failed to respond to the complaint until he was subpoenaed by this Court. Thereafter, he appeared and gave a sworn statement. During his sworn testimony, Mr. Wade admitted he received the complaint and that he failed to respond. Further, he admitted that he did not investigate Mr. Prevento's case, that he never requested the pertinent medical records, and that he never informed Mr. Prevento that he was not going to represent him.

### B. Complaint of Gary P. McGuire

Mr. McGuire paid Mr. Wade a fee of $395.00 to file a petition to terminate alimony payments after his ex-wife remarried. After a two-year period, Mr. Wade still had not filed the petition. Meanwhile, Mr. McGuire continued making alimony payments to his ex-wife in the amount of $200.00 per month, amounting to approximately $4,800.00, plus ten percent interest. Mr. McGuire eventually hired other counsel to represent him.

Mr. McGuire filed an ethics complaint with the ODC, a copy of which was mailed to Mr. Wade. Mr. Wade was subpoenaed by this Court, and he appeared before the ODC for a sworn statement. During his testimony, he admitted that he had been retained to file a petition to terminate alimony, that he had received a fee for the filing of the petition, that he had failed to file the petition, and that he had no good excuse for his behavior.

### C. Complaint of Brown Chiropractic

Mr. Wade settled a personal injury matter on behalf of his client, Rex Crawford. In doing so, Mr. Wade agreed, in writing, to honor a medical lien and assignment of proceeds on behalf of a medical provider, Brown Chiropractic,[4] in the amount of $573.50. Mr.

---

3. The record includes Mr. Wade's sworn statements before the ODC regarding specific ethical violations. These statements were made pursuant to subpoenas issued by this Court and are the only manner in which Mr. Wade has appeared in this matter. Mr. Wade failed to appear before

the HPS for hearings, and he has failed to appear before this Court.

4. At the time of the agreement, Brown Chiropractic was doing business under the name of Willis Chiropractic Offices.

Wade withheld the money from Mr. Crawford's settlement and deposited it into his IOLTA[5] account. However, Mr. Wade failed to forward the money to Brown Chiropractic.

Upon appearance for his sworn statement before the ODC, Mr. Wade admitted that he had not paid Brown Chiropractic. He further admitted that he also owed other third party monies from Mr. Crawford's settlement. A total of $5,000.00 had been withheld from the settlement for State Farm and another $717.70 had been withheld for payments to other parties, none of which was forwarded to the appropriate payees.

### D. Complaint regarding Lawrence Charles

Mr. Wade represented Lawrence Charles in a personal injury action that settled. Based on the same automobile accident, Mr. Wade then filed an action seeking damages against a security company for the outrageous conduct of its employee at the scene of the accident. The action was dismissed for failure to prosecute and Mr. Wade took no action to reinstate the matter. Mr. Wade thereafter began paying Mr. Charles the sum of $300.00 per month for a period of ten years. During his sworn statement before the ODC, Mr. Wade stated that this money was an agreed settlement of a potential legal malpractice action against him. However, Mr. Charles maintains the payments were an advance on his pending lawsuit to provide him financial assistance until his case was concluded.

### E. Mr. Wade's Sworn Statements

As a result of these transgressions, Mr. Wade was requested to respond to each complaint in turn. He failed to do so and had to be subpoenaed by this Court on numerous occasions to appear before the ODC to give sworn statements. During the course of his sworn statement on October 3, 2001, Mr. Wade advised that he was involved in a bitter divorce and had seen a physician on one occasion for situational depression. He was prescribed an antidepressant, which he took for about three weeks before discontinuing

its use. The ODC advised Mr. Wade of the State Bar's Committee on Assistance and Intervention; however, Mr. Wade never took advantage of the offered services. At the May 22, 2002, sworn statement, Mr. Wade testified that he had seen a psychologist on one occasion. He scheduled a second appointment that he then cancelled. He never followed through with any other appointments. On October 3, 2002, Mr. Wade stated that he still had not been to a professional counselor, but that he spoke on a daily basis with a friend who was a minister.

Mr. Wade testified that although his divorce was final, he was still having difficulties with his ex-wife. In April 2002, a suggestion was served on his accounts to collect unpaid fees and support obligations. The family court ordered that no monies were to be removed from Mr. Wade's accounts, including his IOLTA account, without an order by the family court. It was further ordered that an attorney be appointed as a third party commissioner to determine what monies in the IOLTA account were owed to innocent third parties. After a legal notice was published to notify potential claimants, funds were then disbursed for Mr. Wade's overdue support obligations.

### F. Disposition of Disciplinary Proceeding

A formal Statement of Charges was filed against Mr. Wade on November 7, 2003, and service of process was obtained on November 13, 2003, by certified mail. Mr. Wade did not respond. Accordingly, on January 28, 2004, the ODC moved that the formal charges be admitted and that only the issue of sanctions be considered. This motion was served on Mr. Wade by certified mail. Mr. Wade signed a receipt demonstrating that he had accepted the motion. However, he did not attend or participate in the hearing on February 20, 2004, and the motion was granted. The matter of sanctions was considered by the HPS on March 9, 2004; however, Mr. Wade failed to appear or participate in this proceeding after being properly noticed.

---

5. "IOLTA is an acronym for Interest of Lawyer Trust Accounts." *Lawyer Disciplinary Bd. v. Askin,* 203 W.Va. 320, 324 n. 8, 507 S.E.2d 683, 687 n. 8 (1998). Lawyers are required to maintain such an account under Rule 1.15 of the West Virginia Rules of Professional Conduct.

Thereafter, Mr. Wade was advised by letter that proposed findings of fact and conclusions of law were to be submitted by April 1, 2004. He failed to submit any proposed findings or conclusions. The HPS afforded Mr. Wade an additional thirty days to respond, yet he still failed to respond.

Taking into account mitigating and aggravating circumstances, the HPS concluded that Mr. Wade had violated Rule 1.3 [6] and Rule 1.4(a) [7] in matters involving Mr. Prevento, Mr. McGuire, and Mr. Charles. In the Brown Chiropractic matter, the HPS found that Mr. Wade had violated Rule 1.15(b) [8] when he failed to promptly deliver funds. The HPS further concluded that Mr. Wade had wrongfully entered into a legal malpractice settlement agreement with Mr. Charles in violation of Rule 1.8(h).[9] Finally, the HPS found that Mr. Wade had failed to respond and cooperate with disciplinary authority in violation of Rule 8.1(b).[10]

Based on these conclusions, the HPS recommended that Mr. Wade's law license should be annulled. In addition to annulment of his law license, the HPS recommended that Mr. Wade work with the Family Court of McDowell County to insure that any and all third parties are identified and paid in full; that Mr. McGuire be refunded money in the amount of $395.00; that Mr. Wade establish by medical evidence that he is mentally and emotionally fit to engage in the practice of law prior to any reinstatement proceedings; and that Mr. Wade reimburse the Lawyer Disciplinary Board the costs of these proceedings in the amount of $745.70.

## II.

### STANDARD OF REVIEW

■ Although the Board makes recommendations to this Court regarding sanctions to be imposed upon an attorney for ethical violations, we have held that

"[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984).

Syl. pt. 1, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003).

■ Our standard of review of proceedings before the Board was set out in Syllabus point 3 of *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the

---

6. Rule 1.3 of the West Virginia Rules of Professional Conduct provides as follows: "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

7. West Virginia Rule of Professional Conduct 1.4(a) directs:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

8. Rule 1.15(b) of the West Virginia Rules of Professional Conduct provides, in pertinent part:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

9. West Virginia Rule of Professional Conduct 1.8(h) provides:

(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

10. The relevant portion of Rule 8.1(b) of the West Virginia Rules of Professional Conduct provides as follows:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . . .

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]

law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. Sims*, 212 W.Va. 463, 574 S.E.2d 795 (2002). *Accord* Syl. pt. 3, in part, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

■■■ The ODC urges this Court to accept the recommendations as set forth by the HPS. The ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). Mr. Wade failed to appear before this Court. He did not contest the allegations as heard by the HPS. Mr. Wade had an opportunity to appear before the HPS on the issue of the disciplinary charges and again on the issue of sanctions. He failed to appear on either occasion. When Mr. Wade appeared before the ODC for his sworn statements, he admitted to all of the allegations in the complaints. In the absence of any evidence to the contrary, we conclude that the ODC has met its burden of proving the allegations by clear and convincing evidence. Therefore, this Court will not disturb the findings by the HPS that Mr. Wade violated various provisions of the Rules of Professional Conduct.

■■■ We now turn our discussion to consider the appropriate sanctions that should be imposed based on Mr. Wade's conduct. In assessing what sanctions would be appropriate, we examine Mr. Wade's conduct in light of both mitigating and aggravating factors. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt.

2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550. The *Scott* opinion, at Syllabus point 3, further explained that

[m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

213 W.Va. 209, 579 S.E.2d 550.

Based on the evidence submitted to this Court, only one mitigating factor could possibly apply: personal or emotional problems. During his sworn statements, Mr. Wade testified that he was going through a bitter divorce. He also testified he was considering professional help to assist him in recovering from the divorce proceedings. However, Mr. Wade was presented with ample opportunity to seek professional assistance and failed to do so. He again failed to take advantage of a support service that he was directed to by the ODC. Moreover, the timing of the divorce is significant. Many instances of misconduct occurred prior to the institution of Mr. Wade's divorce. While a bitter divorce can, in some circumstances, qualify as a mitigating factor in determining appropriate attorney sanctions for misconduct, it does not serve as a mitigating measure in this case.

■■■ In addition to the lack of mitigating factors in Mr. Wade's case, several aggravating factors exist. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Scott*, 213 W.Va. 209, 579 S.E.2d 550. Mr. Wade had had prior disciplinary proceedings against him, so he was familiar with the disciplinary process.

Nevertheless, he failed to cooperate with the ODC. He failed to respond to written requests for responses, and he appeared for his sworn statements only when subpoenaed by this Court. Moreover, he failed to appear at hearings before the HPS regarding the allegations against him and regarding the sanctions to be imposed. This pattern of disregard has continued before this Court where Mr. Wade has failed to file any responsive briefs and has declined to respond to letters seeking input as to whether he desired oral argument in his case. Moreover, Mr. Wade accepted legal fees for services which he never performed, and he has exhibited a pattern of failing to communicate with his clients, making material misrepresentations to his clients, and failing to diligently pursue cases on behalf of his clients. All of these details are aggravating factors in Mr. Wade's case.

The lack of mitigating factors and the presence of substantial aggravating factors lead to the conclusion that the recommendations submitted by the HPS are appropriate. In fashioning the sanction, this Court is mindful of its prior holding that

" '[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on .Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989).

Syl. pt. 7, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998). "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Committee on Legal Ethics v. Keenan,* 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). *Accord Lawyer Disciplinary Bd. v. Sims,* 212 W.Va. 463, 469, 574 S.E.2d 795, 801 (2002) (per curiam) (Davis, J., concurring, in part, and dissenting, in part). Based on the

severity of Mr. Wade's misconduct and his lack of interest in the disciplinary proceedings against him, as well as the financial and emotional impact his actions have had on his clients, the only adequate discipline that would serve the public policy interests is annulment of Mr. Wade's law license.

## IV.

## CONCLUSION

For the foregoing reasons, we adopt the recommendations set forth by the HPS. Therefore, we annul Mr. Wade's license to practice law in the State of West Virginia.

License to practice law in West Virginia annulled.