693 S.E.2d 461

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**William C. MARTIN, A Member of The West Virginia State Bar, Respondent.**

**No. 34734.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2010.

Decided March 4, 2010.

Renee N. Frymyer, Office of Disciplinary
Counsel, Charleston, WV, for Complainant.

William C. Martin, Sutton, WV, Pro se.

PER CURIAM:

This lawyer disciplinary proceeding against William C. Martin (hereinafter "Mr. Martin") was brought to this Court by the Office of Disciplinary Counsel (hereinafter the "ODC") on behalf of the Lawyer Disciplinary Board (hereinafter the "Board"). The Board's Hearing Panel Subcommittee (hereinafter the "HPS") determined that Mr. Martin committed numerous violations of the Rules of Professional Conduct and recommended that Mr. Martin be suspended from the practice of law for a period of six months, among other recommendations that will be more fully set forth in this opinion. Mr. Martin argues, however, that suspension of his law license is too harsh a punishment and, further, that sanctions such as probation, limitation of the nature or extent of future practice, community service, admonishment, or reprimand would be more appropriate punishment. Based upon the oral arguments presented to this Court,[1] the record designated for our consideration, and the pertinent authorities, we adopt the recommendations set forth by the Hearing Panel Subcommittee.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Martin was admitted to the West Virginia State Bar in 1978 and his law practice is situated in Sutton, West Virginia. The underlying factual history of this disciplinary proceeding began in 1999 when Mr. Martin prepared a document titled "Last Will & Testament of Anna Lee Davis Horner." Mr. Martin was named the executor of the Estate of Anna Lee Davis Horner (hereinafter the "estate") in this document. On April 2, 2002, Ms. Horner passed away.

Mr. Martin was appointed as executor of Ms. Horner's estate on April 8, 2002, by the Harrison County Commission. Nine days later, on April 17, 2002, Mr. Martin wrote a check to himself from Ms. Horner's checking account for the amount of five thousand dollars. The memo line contained the phrase "Executor fee." A second check, in the amount of three thousand dollars, was deposited into Mr. Martin's account from Ms. Horner's checking account on July 12, 2004, with the term "Fees" in the memo line. On September 20, 2004, Mr. Martin deposited a third check written to himself from Ms. Horner's checking account. The check was in the amount of three thousand dollars and contained no notation in the memo line.

In 2005, a beneficiary of Ms. Horner's estate, Barbara Warder, retained counsel and filed a "Motion to Remove Executor" with the Harrison County Commission (hereinafter the "Commission"). Mr. Martin opposed the motion. On April 28, 2005, the Commission found that Mr. Martin did not properly administer the estate and ordered that he be removed as executor. Further, the Commission ordered that Mr. Martin refund all fees previously taken from the estate,[2] that he turn over the file,[3] and that he provide an accounting of all of his activity with the estate to its beneficiaries and to the Commission. On June 9, 2005, Barbara Warder was appointed by the Commission as administratrix of the estate.

On December 12, 2005, the estate, through counsel, filed a civil suit, Number 05–C–628, in the Circuit Court of Harrison County

---

1. The ODC argued orally before this Court. Mr. Martin did not appear for oral argument.

2. Nine months later, on February 12, 2006, Mr. Martin repaid the $11,000.00 he owed to the estate pursuant to the Commission's order. The payment was made subsequent to the institution by the estate of both a civil action and an ethics complaint, both of which are discussed further in this opinion, *infra*.

3. After a nine-month delay, Mr. Martin finally turned the estate file over to the administratrix. During the lawyer disciplinary proceedings, which are discussed in further detail later in this opinion, *infra*, the HPS found that the disarray of the file caused the new administratrix to spend substantial time correcting Mr. Martin's misconduct. The file was a box full of papers and folders in no apparent order. Significantly, many stock dividend checks were contained in the file. Some remained sealed and had not been opened. Several of the checks had expired, causing the administratrix to use significant time having the checks reissued to recoup the monies for the estate.

against Mr. Martin. The complaint alleged that Mr. Martin breached his fiduciary duties to the estate, misappropriated funds from the estate by paying cash to himself and to others,[4] and failed to comply with the Commission's order to refund money due to the estate and to provide an accounting of the estate to its beneficiaries. The circuit court granted default judgment to the estate as to liability on February 23, 2007, resulting from Mr. Martin's malfeasance in handling the estate. The matter was set for a hearing to determine damages. On December 23, 2008, the circuit court ordered Mr. Martin to pay the amount of $13,831.40,[5] representing compensatory damages, consequential damages, attorney's fees, and court costs. The order also mandated that pre- and post-judgment interest be paid.[6]

Subsequent to the Commission action to remove Mr. Martin as executor and subsequent to the institution of the civil action, the estate's administratrix, Barbara Warder, filed a verified ethics complaint with the ODC on January 23, 2006. The complaint alleged that Mr. Martin neglected the estate, misappropriated funds therefrom, and re-

fused to comply with the Commission's order. In response, Mr. Martin denied that he misappropriated any funds from the estate. Further, he asserted that he complied with the Commission's order. In his defense, Mr. Martin contended that the funds he paid to himself out of the estate were fees that he believed he was entitled to for the services he performed. However, he was unable to provide any records of time spent on the estate case due to a fire destroying the contents of his office in March 2006.

As a result of the abovementioned conduct and with consideration of mitigating and aggravating factors,[7] the HPS found that Mr. Martin violated Rule 1.3 [8] of the West Virginia Rules of Professional Conduct by failing to diligently represent the interests of the estate. Because it was found that Mr. Martin failed to promptly disburse monies from the estate to the beneficiaries and failed to provide an accurate accounting to the Commission and to the beneficiaries of the estate, the HPS additionally determined that Mr. Martin violated Rules 1.15(a) and (b) of the Rules of Professional Conduct.[9] The HPS

4. In addition to the $11,000.00 that Mr. Martin paid to himself from the estate, he also provided a $50,000.00 check to an estate beneficiary. It was determined that this specific beneficiary was entitled to ownership of certain telephone stocks; however, she was not entitled to the cash payment. Mr. Martin admitted that he mistakenly paid the beneficiary an amount of $50,000.00. Ms. Warder, after being appointed administratrix, recouped the $50,000.00 due to the estate from the beneficiary.

5. This amount is comprised of the following: $3,650.00 for denied income tax refunds; $4,085.17 for interest and penalties for failure to file income taxes; $2,289.10 for attorney's fees in the estate removal proceeding; $1,389.13 in lost interest; $1,800.00 in additional bonding costs; $190.00 for bank fees; and $428.00 in costs for appointment of the replacement administratrix. As illustrated by the evidence and disposition of the civil action, in the three years that Mr. Martin had control of the estate, he failed to file tax returns for the estate.

6. The testimony elicited during the lawyer disciplinary proceedings illustrates that, the week prior to the hearing before the HPS, Mr. Martin sent a check for roughly $14,000.00 to the estate along with a letter stating that it was for the judgment and six months of interest. There was some discussion as to the failure to provide prejudgment interest as ordered; however, the par-

ties indicated that the estate could cash the check without constituting a waiver of the full amount due and that they would come to an agreement on the remaining interest due on the judgment reached in the Circuit Court of Harrison County.

7. Several aggravating factors were found: lack of remorse, failure to respond to direct orders from the Commission and the Circuit Court of Harrison County, and a lack of awareness of the severity of the situation. The mitigating factors found were a lack of a prior disciplinary record and Mr. Martin's lack of familiarity with estate work.

8. Rule 1.3 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

9. The relevant portions of Rules 1.15(a) and (b) of the West Virginia Rules of Professional Conduct provide as follows:

Rule 1.15. Safekeeping property.
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained

further found that Mr. Martin failed to tender the estate file upon request and upon his termination as executor; therefore, it was decided that he violated Rule 1.16(d) of the Rules of Professional Conduct.[10] As a result of Mr. Martin's failure to fully comply with the provisions of the Commission's order, the HPS contended that Mr. Martin violated Rule 3.4(c)[11] of the Rules of Professional Conduct. Finally, the HPS found that Mr. Martin engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d)[12] of the West Virginia Rules of Professional Conduct.

Based on these conclusions, the HPS made the following recommendations:

(1) That [Mr. Martin] be suspended from the practice of law for a period of six (6) months;

(2) That, upon reinstatement, [Mr. Martin's] practice be supervised for a period of one (1) year;

(3) That [Mr. Martin] complete twelve (12) hours of CLE in ethics in addition to such ethics hours he is otherwise required to complete to maintain his active license to practice; said additional twelve (12) hours to be completed before he is reinstated;

(4) That [Mr. Martin] fully comply with the orders of the Circuit Court of Harrison County regarding damages awarded to

Complainant in Civil Action No. 05–C–628–1; and

(5) That [Mr. Martin] be ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Mr. Martin agrees that he mishandled the estate. However, he disagrees with the recommendations of the Hearing Panel Subcommittee. Mr. Martin feels that the sanctions of a six-month suspension and one year of supervised practice are not warranted. Thus, while recognizing that some form of discipline is appropriate, he asserts that sanctions such as probation, limitation on the nature or extent of future practice, community service, admonishment, or reprimand are more appropriate. This matter now comes before this Court for resolution.

## II.

### STANDARD OF REVIEW

■ Although the HPS makes recommendations to this Court regarding sanctions to be imposed upon an attorney for ethical violations, we have held that " '[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syllabus point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va.

---

in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of *such account* funds and other *property* shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

10. Rule 1.16(d) of the West Virginia Rules of Professional Conduct states, in subsection (d),

that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

11. West Virginia Rules of Professional Conduct, Rule 3.4(c), provides as follows:

**Rule 3.4 Fairness to opposing party and counsel.**
A lawyer shall not:
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

12. The relevant portion of Rule 8.4 of the West Virginia Rules of Professional Conduct provides as follows: "[i]t is professional misconduct for a lawyer to: ... (d) engage in conduct that is prejudicial to the administration of justice[.]"

494, 327 S.E.2d 671 (1984)." Syl. pt. 1, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003).

■ Further, the standard of this Court's review of such matters is well-settled:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). *Accord* Syl. pt. 3, *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The ODC urges this Court to accept the recommendations as set forth by the Hearing Panel Subcommittee because, as the ODC contends, Mr. Martin violated duties to his client, to the public, to the legal system, and to fellow members of the legal profession. While Mr. Martin admits that he mishandled the estate and failed to diligently represent the interests associated therewith, he denies certain other factual determinations by the HPS, which will be discussed herein.[13] We will first discuss the findings of fact, then turn our attention to the appropriate sanctions to be imposed based upon Mr. Martin's conduct.

■ In discussing the factual findings, we reiterate that " 'Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence....' Syllabus Point 1, [in part,] *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995)." Syl. pt. 2, in part, *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995). However, once the HPS makes its findings, they are afforded substantial deference. *See* Syl. pt. 3, *McCorkle,* 192 W.Va. 286, 452 S.E.2d 377, *supra.* Moreover, because the Board's factual findings and conclusions are given substantial deference, "[t]he burden is on the attorney at law to· show that the factual findings are not supported by reliable, probative, and substantial evidence on the whole adjudicatory record made before the [Board]." *McCorkle,* 192 W.Va. at 290, 452 S.E.2d at 381.

In this case, the HPS found that the evidence established that Mr. Martin violated Rules 1.3, 1.15(a), 1.15(b), 1.16(d), 3.4(c), and 8.4(d) [14] of the Rules of Professional Conduct. Mr. Martin admits that he violated Rule 1.3 in that he failed to diligently represent the interests of the estate, and, further, that he violated Rule 1.16(d) when he failed to tender the estate file to the new estate executor in a timely manner. He denies that he violated Rules 1.15(a) and (b) in that he disagrees with the determination by the HPS that he failed to promptly disburse monies from the estate to the beneficiaries and failed to provide an accurate accounting to the Harrison County Commission and the estate beneficia-

13. During the hearing before the HPS, Mr. Martin also argued that it was improper to discipline him for his actions as executor of the estate. He reasoned that he was not performing the actions as a lawyer but, rather, was acting in the capacity of an executor; therefore, the West Virginia Rules of Professional Conduct should not apply to his role as estate executor. The HPS summarily dismissed this argument, finding that Mr. Martin was made executor of the will with full knowledge that he was a lawyer and with an expectation that he would execute the will as such. Mr. Martin did not reassert this argument in his brief before this Court.

14. The ODC also charged Mr. Martin with violating Rule 8.4(c) of the Rules of Professional Conduct, involving dishonesty, fraud, deceit, or misrepresentation. However, the HPS rejected this assertion. In the action before this Court, the ODC does not contest the HPS's determination that Mr. Martin did not violate Rule 8.4(c); therefore, this Court will not review Mr. Martin's conduct in relation to such rule.

ries. Thus, Mr. Martin denies that he violated Rule 3.4(c) because he avers that he complied with the order of the Harrison County Commission. Finally, Mr. Martin denies that he violated Rule 8.4(d)[15] because he did not commingle, misappropriate, or convert any estate monies. Mr. Martin concedes that he violated Rules 1.3 and 1.16(d); therefore, the attendant findings by the HPS regarding these two rules will not be disturbed. We now focus on the rules and the conduct in dispute.

▪ The rule violations disputed by Mr. Martin, Rules 1.15(a) and (b), Rule 3.4(c), and Rule 8.4(d), all involve Mr. Martin's fees that he paid to himself from the estate and the Commission orders that resulted from his involvement as executor of the estate. The HPS found that Mr. Martin failed to promptly disburse monies from the estate to the beneficiaries and failed to provide an accurate accounting to the Commission and to the beneficiaries; therefore, it was found that he violated Rules 1.15(a) and (b) regarding safekeeping of property of clients or third persons and prompt disbursement thereof. In this case, Mr. Martin failed to timely deliver assets and property to the beneficiaries. Because Mr. Martin failed to act reasonably, the estate still has not been closed and the beneficiaries have yet to realize their full inheritances. When the new executor received the estate file, stock dividend checks were found among the paperwork. Some envelopes were opened while others were still sealed. Certain checks had reached their expiration dates, and the executor had to expend a great deal of time and energy to have the checks reissued. This dilatoriness on Mr. Martin's part has caused a delay in closing the estate, depriving the beneficiaries of their property. Further, Mr. Martin's procrastination, especially in the failure to file tax returns and the resulting penalties and interest now owed by the estate, has subtracted from the benefit rightfully due to the beneficiaries. Significantly, Mr. Martin is unable to account for any of his time spent on this case. While he claims that the records were destroyed in an office fire, to which this Court is sympathetic, he has made no attempt to reconstruct the records of his time or efforts involved in the case. His assertions of attempts to sort telephone stocks and travels to inventory the estate are not mirrored in the contents of the estate file that was turned over to the new executor upon Mr. Martin's removal therefrom. Therefore, we agree with the determination by the HPS that Mr. Martin violated Rules 1.15(a) and (b) in failing to disburse monies owed to beneficiaries, keep complete records, and provide an accounting of the estate.

▪ Mr. Martin also denies that he violated Rule 3.4(c) because he contends that he complied with the order from the Commission that resulted from the removal proceeding. In that order, the Commission ordered Mr. Martin to repay the $11,000.00 fee that he had advanced to himself, to provide the estate file to the new executor, and to provide an "accounting, financial and otherwise, to the beneficiaries and to this County Commission for all activity up to the date of his removal." Mr. Martin repaid the $11,000.00;

---

**15.** The HPS found no misappropriation of funds, but did find gross negligence. The money that Mr. Martin paid to himself from the estate funds totaled $11,000.00. It was specifically found by the HPS that Mr. Martin did not misappropriate these funds. First, although it took a removal action and then nine additional months, Mr. Martin repaid these funds to the estate. The estate was valued at an estimated one million dollars. The HPS reasoned that Mr. Martin, as executor, could possibly be entitled to a fee of around $50,000.00 pursuant to the applicable law. *See* W. Va.Code § 44-4-12 (2002) (Repl. Vol. 2004) (determining that an executor is entitled to a reasonable fee); *Black v. Black*, 171 W.Va. 307, 298 S.E.2d 843 (1982) (recognizing an executor fee of 5% of the gross receipts to be a reasonable executor's fee). Therefore, while the $11,000.00 could have been an appropriate fee, Mr. Martin was only entitled to such fee if he had performed any work to justify the fee. While it was found that he had not earned the fee due to a lack of evidence of any work on the estate, it was specifically found that he did not misappropriate these funds. For that reason, Mr. Martin's situation does not fall into the same category of recent cases by this Court annulling law licenses for misappropriation of funds. *See generally Lawyer Disciplinary Bd. v. Barton*, 225 W.Va. 111, 690 S.E.2d 119 (2010) (per curiam); *Lawyer Disciplinary Bd. v. Brown*, 223 W.Va. 554, 678 S.E.2d 60 (2009) (per curiam); *Lawyer Disciplinary Bd. v. Wade*, 217 W.Va. 58, 614 S.E.2d 705 (2005) (per curiam); *Lawyer Disciplinary Bd. v. Wheaton*, 216 W.Va. 673, 610 S.E.2d 8 (2004) (per curiam).

therefore, that portion of the order was fulfilled. While Mr. Martin did provide the file to the new executor, it took nine months for him to do so. Even then, it was received only after the new executor had involved legal counsel who contacted Mr. Martin on multiple occasions before the file was delivered. Importantly, when Mr. Martin finally presented the file, it clearly showed a lack of diligence on his part and that he had not been completing his executor duties. The new executor had to expend an inordinate amount of time to organize the file and to determine what work, if any, had been accomplished. Moreover, there was no accounting, financial or otherwise, provided to the Commission or to the beneficiaries. Therefore, the HPS was correct in determining that Mr. Martin violated Rule 3.4(c).

■ The final rule violation disputed by Mr. Martin is the HPS's determination that he violated Rule 8.4(d). The HPS found that Mr. Martin engaged in conduct prejudicial to the administration of justice. Mr. Martin's actions and omissions in this case have negatively impacted the estate and its beneficiaries. Any corrective actions, such as repaying advanced executor fees, reimbursing monies incurred as tax penalties due to his failure to file returns, providing documentary items, etc., only occurred after a substantial delay of time and after being ordered by either the Commission or the circuit court to take such measures. Unfortunately, many of these advancements occurred only after actions by the estate's administratrix in filing a removal action, a civil action, and a lawyer disciplinary action. Moreover, in the three years that he controlled it, the estate incurred additional fees as a result of Mr. Martin's failure to act appropriately. At the time of the underlying hearing before the HPS, the estate was still owed monies, some from Mr. Martin as a result of the civil action;[16] therefore, it remained open without full distributions to the beneficiaries and with the incurrence of additional bonding fees and accounting fees. Thus, we agree with the HPS's determination that Mr. Martin engaged in conduct prejudicial to the administration of justice.

■ Having determined that we agree with the HPS's findings that Mr. Martin violated Rules 1.3, 1.15(a), 1.15(b), 1.16(d), 3.4(c), and 8.4(d) of the Rules of Professional Conduct, we now turn our focus to the appropriate sanctions to be imposed for Mr. Martin's misconduct, or lack of conduct. The HPS recommended a six-month suspension, as well as other sanctions discussed herein. As this Court has previously recognized,

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). We analyze these factors with the recognition that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994).

An analysis of the first factor leads this Court to the conclusion that Mr. Martin's misconduct violated a duty owed to a client, to the public, to the legal system, and to the profession. Mr. Martin paid himself an advance fee that he would have been entitled to if, in fact, he had done any work to support the fee. While he argues he performed sufficient work for the fee, the record does not

---

**16.** As previously noted, the week prior to the disciplinary hearing, Mr. Martin tendered a check for roughly $14,000.00. However, the issue of pre-judgment interest remained.

support this assertion. Significantly, when ordered by both the Harrison County Commission and the Circuit Court of Harrison County to do certain things and pay certain monies, his delays in complying with those orders caused the estate and its beneficiaries to incur even greater expenses. Therefore, we will not disturb the finding made by the HPS.

Second, the HPS found that Mr. Martin's misconduct was not intentional, but that it was gross negligence. It was acknowledged that Mr. Martin did not have much experience in performing estate work. While lack of experience may account for some of the misconduct, it does not account for Mr. Martin's dilatoriness and failure to comply with tribunal orders in an attempt to make amends for his transgressions. Therefore, we agree with the HPS that his conduct was grossly negligent.

Next, the amount of the injury, in a monetary sense, is calculable. Mr. Martin's advance fee to himself was $11,000.00, which he returned. The judgment of the circuit court was that damages related to his failure to file income taxes, need for removal as executor, etc., was $13,831.40, plus pre- and post-judgment interest. Mr. Martin has paid $14,000.00 of this amount and the parties, during the underlying proceeding, agreed that they could work out the details of any additional interest owed. However, the estate remained open as of the time of the underlying disciplinary proceeding, causing continued emotional pain and financial expense to the beneficiaries. While we acknowledge Mr. Martin's attempts to make financial restitution, we also note that these gestures occurred only after the estate went to great expense to file a removal action, a civil action, and an ethics complaint. We have previously recognized that for restitution to be accepted as a mitigating factor, it must be made promptly. *See Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 570, 505 S.E.2d 619, 633 (1998). Therefore, we find that the amount of injury is great from both a financial sense and an emotional sense to the beneficiaries.

Finally, in assessing the appropriate sanctions to be imposed, we examine Mr. Martin's conduct in light of both mitigating and aggravating factors. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). The *Scott* opinion, at Syllabus point 3, further explains that

[m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

213 W.Va. 209, 579 S.E.2d 550. By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Scott, id.*

Based on the evidence before the HPS, several aggravating factors were found, including Mr. Martin's lack of remorse and lack of recognition of the severity of the situation. Further, as found by the HPS, he fought the removal action even though he knew he had not handled the estate in a reasonable fashion. He continued this disturbing behavior by failing to comply with orders from both the Commission and the circuit court. The only mitigating factors found were Mr. Martin's lack of experience with estate work and lack of a prior disciplinary record.

Taking into account both the mitigating and the aggravating factors, we conclude that the recommendations submitted

by the HPS are appropriate. In fashioning the sanction, this Court is mindful of its prior holding that,

"'[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

Syl. pt. 7, *Jordan*, 204 W.Va. 495, 513 S.E.2d 722.

### IV.

### CONCLUSION

For the foregoing reasons, we adopt the sanction recommendations set forth by the Hearing Panel Subcommittee as follows:

(1) That [Mr. Martin] be suspended from the practice of law for a period of six (6) months;

(2) That, upon reinstatement, [Mr. Martin's] practice be supervised for a period of one (1) year;

(3) That [Mr. Martin] complete twelve (12) hours of CLE in ethics in addition to such ethics hours he is otherwise required to complete to maintain his active license to practice; said additional twelve (12) hours to be completed before he is reinstated;

(4) That [Mr. Martin] fully comply with the orders of the Circuit Court of Harrison County regarding damages awarded to Complainant in Civil Action No. 05–C–628–1; and

(5) That [Mr. Martin] be ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

License to practice law in West Virginia suspended.