IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 15-0957

_____

FILED

**June 1, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

MARK S. PLANTS,
Respondent

_____

Lawyer Disciplinary Proceeding
I.D. Nos.: 14-06-187 & 14-06-444

PUBLIC REPRIMAND AND COSTS

_____

Submitted: February 7, 2017
Filed: June 1, 2017

Joanne M. Vella Kirby                    James M. Cagle
Rachel L. Fletcher Cipoletti            Charleston, West Virginia
Office of Disciplinary Counsel          Counsel for the Respondent
Charleston, West Virginia
Counsel for the Petitioner

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus Point 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994).

2.     "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syllabus Point 3*, Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

3.     "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession."  Syllabus Point 3*, Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

i

4.     "Ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." Syllabus Point 3, *Committee on Legal Ethics of West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

5.     "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows:  'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus Point 4, *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

6.     "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed."  Syllabus Point 2, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003).

7.      "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus Point 3, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003).

8.      "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed."  Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003).

9.      "In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent

facts with reference to the charges and the recommended disciplinary action." Syllabus Point 2, *Committee on Legal Ethics of the West Virginia State Bar v. Mullins*, 159 W.Va. 647, 226 S.E.2d 247, 248 (1976), overruled on other grounds by *Committee on Legal Ethics of the West Virginia State Bar v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993).

10. "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property are not properly cognizable by a court." Syllabus Point 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908).

WALKER, Justice:

This lawyer disciplinary proceeding is before the Court upon the written objection of the Office of Disciplinary Counsel ("ODC") of the Lawyer Disciplinary Board ("LDB") to the sanctions recommended by the Hearing Panel Subcommittee ("HPS") of the LDB. The HPS found that Respondent Mark S. Plants violated three provisions of the West Virginia Rules of Professional Conduct and recommended that Mr. Plants be publicly reprimanded and pay the costs of these proceedings. Mr. Plants does not challenge the recommended sanctions.

The ODC asserts that the appropriate sanction in this case is a suspension of Mr. Plants's license to practice law for three months based upon the seriousness of the violations involving domestic battery and the knowing violation of a court order by this former elected prosecuting attorney. The ODC also urges this Court to address the admissibility of expert testimony offered on the issue of violations of the West Virginia Rules of Professional Conduct.

Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, this Court finds that there is clear and convincing

1

evidence[1] to support the findings of the HPS that Mr. Plants violated Rules 1.7(b), 3.4(c) and 8.4(b) and (d) of the West Virginia Rules of Professional Conduct. For the reasons explained below, we adopt the sanctions recommended by the HPS.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Plants has been licensed to practice law in the State of West Virginia since 2004. He was elected prosecuting attorney of Kanawha County in 2008 and re-elected in 2012. The underlying charges involve conduct that occurred in 2014 while he was the prosecuting attorney. Since his removal from elected office in October of 2014, Mr. Plants has practiced law as a sole practitioner in South Charleston.

### A.    Incidents and Criminal Complaints

The charges filed by the ODC against Mr. Plants arose out of two incidents that resulted in criminal complaints against him. First, on February 26, 2014, Allison Plants, Mr. Plants's ex-wife ("Ms. Plants"), reported to the West Virginia State Police that Mr. Plants had injured their son by whipping him with a belt. The next day, Ms. Plants filed a Domestic Violence Petition seeking protection for herself and their two minor children. The magistrate/family court issued a Domestic Violence Emergency

---

[1]Rule 3.7 of the Rules of Lawyer Disciplinary Procedure states: "In order to recommend the imposition of discipline of any lawyer, the allegations of the formal charge must be proved by clear and convincing evidence."

Protective Order ("Emergency Protective Order") on February 27, 2014, concluding that Ms. Plants had proved "the allegations of domestic violence or abuse by clear and convincing evidence of immediate and present danger of abuse."

The Emergency Protective Order provided that Mr. Plants (1) "shall refrain from abusing, harassing, stalking, threatening, intimidating or engaging in conduct that places [Ms. Plants and the two children] . . . in reasonable fear of bodily injury"; (2) "shall refrain from contacting, telephoning, communicating with, harassing, or verbally abusing [Ms. Plants]"; (3) shall refrain from entering any school, business, or place of employment of [Ms. Plants]"; and (4) "shall refrain from entering or being present in the immediate environs of [Ms. Plants's] residence."

On March 17, 2014, while the Emergency Protective Order was in effect, Ms. Plants reported that in the parking lot at the Fruth Pharmacy in Charleston, West Virginia, Mr. Plants spoke to their two children at her vehicle and then spoke to her. During the hearing before the HPS, Mr. Plants admitted that he spoke with his children but denied that he communicated with Ms. Plants. Mr. Plants further acknowledged that he was aware of the terms of the Emergency Protective Order at the time of this incident. The evidence adduced during the hearing was that as Mr. Plants was exiting Fruth Pharmacy, Ms. Plants entered the same location. After exiting Fruth Pharmacy, Mr. Plants observed his children waving to him from inside Ms. Plants's car in the parking lot and he walked over to speak with them. After Ms. Plants returned to her car, Mr. Plants

3

walked away. The next day, the State Police filed a criminal complaint in magistrate court charging Mr. Plants with violating the Emergency Protective Order based upon this incident.

On March 21, 2014, the family court modified the Emergency Protective Order according to an agreement between the parties. Among other things, the modified Emergency Protective Order permitted Mr. Plants to have supervised visitation with the children and to communicate with the children. Except as otherwise agreed by the parties, the original terms of the Emergency Protective Order continued in full force and effect.

On March 31, 2014, the State Police filed a criminal complaint charging Mr. Plants with domestic battery based upon the report on February 26 by Ms. Plants that Mr. Plants had whipped their son with a belt. On April 7, 2014, Mr. Plants filed a motion to dismiss this charge on the grounds that he had a constitutionally protected right to discipline his child and that there is no liability for the reasonable use of corporal punishment for disciplinary purposes. Mr. Plants admitted that he "spanked his son with his leather belt."

On June 19, 2014, the family court entered a 90-day Domestic Violence Protective Order at the final hearing to address the status of the Emergency Protective Order. The family court found that Ms. Plants "proved by a preponderance of the

4

evidence . . . allegations of domestic violence or abuse" under West Virginia Code § 48-27-501. The family court further found that "[t]hough Mr. Plants did not intend to injure his son, the incident was significant and serious enough to warrant the issuance of a protective order." The Domestic Violence Protective Order expired by its own terms on September 17, 2014.

On July 14, 2014, Mr. Plants and the Special Assistant Prosecuting Attorney ("Special Prosecutor") entered into a Pretrial Monitoring Agreement as a Condition of Bond ("Monitoring Agreement") relating to both criminal complaints. In that Agreement, Mr. Plants agreed, among other things "to comply fully with the provisions of this agreement for a period of six (6) months or upon completion of the BIPPS (Batterers Intervention and Prevention Program) class, whichever occurs last." The Agreement also provided that if Mr. Plants "successfully completes [the BIPPS] class and fully complies with all of the other terms of the Agreement, the circumstances would be communicated to the Special Prosecutor for consideration prior to the final compliance hearing."

On May 21, 2015, the magistrate court dismissed both criminal complaints against Mr. Plants with prejudice based upon a joint motion in which the Special Prosecutor attested that Mr. Plants had successfully completed the BIPPS program and had not violated any terms of the Monitoring Agreement.

5

## B.    *Collateral Proceedings*

After the incidents that resulted in misdemeanor criminal complaints against Mr. Plants, three collateral proceedings relating to his position as prosecuting attorney ensued.  First, on April 11, 2014, the ODC petitioned this Court, pursuant to Rule 3.27 of the Rules of Lawyer Disciplinary Procedure, for immediate, temporary suspension of Mr. Plants and/or the disqualification of Mr. Plants and the Kanawha County Prosecutor's Office from instituting actions or prosecuting claims related to domestic violence involving a parent or guardian and a minor child.  The ODC alleged that the temporary suspension was necessary due to a conflict of interest that posed a substantial threat of irreparable harm to the public.

In its Rule 3.27 petition, the ODC asserted that by denying the domestic battery charges against him, Mr. Plants created a non-waivable conflict of interest in violation of Rule 1.7(b) of the West Virginia Rules of Professional Conduct in which his personal interests materially limited his ability to execute properly his official duties.  Mr. Plants responded that temporary suspension or disqualification was unnecessary because the action taken at the circuit court by entering an order disqualifying him from certain cases was sufficient to protect the public.  We denied the ODC's petition on the grounds that the Circuit Court of Kanawha County, pursuant to a petition for writ of prohibition by the City of Charleston ("City") and the Charleston Police Department ("Police Department"), properly removed Mr. Plants from any cases involving the subject matter

6

similar to the pending criminal charges against him thereby removing the threat of a possible conflict of interest. *Office of Lawyer Disciplinary Counsel v. Plants*, 233 W.Va. 477, 485, 759 S.E.2d 220, 228 (2014).

As referenced above, while the ODC's Rule 3.27 petition was proceeding, the City and the Police Department filed a petition for writ of prohibition on April 14, 2014. The petition sought to prohibit Mr. Plants and the Kanawha County Prosecuting Attorney's Office from prosecuting allegations of domestic violence involving parents and minor children reported, investigated or charged by the City and the Police Department until the conflict of interest issue identified by the ODC was resolved. Following a hearing, the circuit court entered an agreed order in which Mr. Plants and the Kanawha County Prosecuting Attorney's Office agreed to be disqualified from three categories of cases: (1) crimes of violence against a child; (2) abuse and neglect; and (3) criminal violations of domestic violence protection orders.

Finally, on August 15, 2014, the Kanawha County Commission instituted proceedings pursuant to West Virginia Code §6-6-7(c)(1985)[2] to remove Mr. Plants from

---

[2] West Virginia Code § 6-6-7 was amended effective June 9, 2016. At the time of the underlying proceedings, it stated in relevant part as follows:

> (a) Any person holding any county, school district or municipal office, including the office of a member of a board

(continued . . .)

of education and the office of magistrate, the term or tenure of which office is fixed by law, whether the office be elective or appointive, except judges of the circuit courts, may be removed from such office in the manner provided in this section for official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality or for any of the causes or on any of the grounds provided by any other statute.

(b) Charges may be preferred:

(1) In the case of any county officer, member of a district board of education or magistrate, by the county commission, or other tribunal in lieu thereof, any other officer of the county, or by any number of persons other than such county officers, which number shall be the lesser of fifty or one percent of the total number of voters of the county participating in the general election next preceding the filing of such charges . . . .

(c) The charges shall be reduced to writing in the form of a petition duly verified by at least one of the persons bringing the same, and shall be entered of record by the court, or the judge thereof in vacation, and a summons shall thereupon be issued by the clerk of such court, together with a copy of the petition, requiring the officer or person named therein to appear before the court, at the courthouse of the county where such officer resides, and answer the charges on a day to be named therein, which summons shall be served at least twenty days before the return day thereof in the manner by which a summons commencing a civil suit may be served.

The court, or judge thereof in vacation, or in the case of any multi-judge circuit, the chief judge thereof, shall, without delay forward a copy of the petition to the supreme court of appeals and shall ask for the impaneling or convening of a three-judge court consisting of three circuit judges of the state. The chief justice of the supreme court of appeals shall without delay designate and appoint three circuit judges within the state, not more than one of whom shall be from the

(continued . . .)

the office of prosecuting attorney. After a hearing, the three-judge panel appointed to consider the matter ruled that Mr. Plants should be removed from office on the grounds of malfeasance in office by committing wrongful conduct affecting the performance of his duties. The panel further found that Mr. Plants had neglected the duties of his office by voluntarily agreeing to a disqualification that had, in effect, prevented him from giving appropriate attention to a substantial and important part of his statutory duties. Mr. Plants did not appeal the panel's decision.

## C.  Charges by the Lawyer Disciplinary Board

---

same circuit in which the petition is filed and, in the order of such appointment, shall designate the date, time and place for the convening of such three-judge court, which date and time shall not be less than twenty days from the date of the filing of the petition.

Such three-judge court shall, without a jury, hear the charges and all evidence offered in support thereof or in opposition thereto and upon satisfactory proof of the charges shall remove any such officer or person from office and place the records, papers and property of his office in the possession of some other officer or person for safekeeping or in the possession of the person appointed as hereinafter provided to fill the office temporarily. Any final order either removing or refusing to remove any such person from office shall contain such findings of fact and conclusions of law as the three-judge court shall deem sufficient to support its decision of all issues presented to it in the matter.

W.Va. Code § 6-6-7 (1985).

The LDB filed a formal Statement of Charges on October 2, 2015, alleging that Mr. Plants violated Rules 1.7(b) (conflict of interest),[3] 3.4(c) (knowingly disobey rule of a tribunal),[4] 8.4(b) (criminal act),[5] and 8.4(d) (prejudice to the administration of justice).[6] In his answer, Mr. Plants denied any violation of the Rules of Professional Conduct but admitted that the two incidents occurred. In his answer and during the hearing before the HPS, Mr. Plants contended that corporal punishment was an acceptable form of discipline to which he and Ms. Plants had agreed and noted that the family court judge had ruled that he did not intend to injure his son. Mr. Plants also explained his concerns for the safety of his children when he saw them in Ms. Plants's car in the parking lot of Fruth Pharmacy. Mr. Plants denied knowingly or willfully violating the Emergency Protective Order.

---

[3] Because the subject conduct occurred prior to January 1, 2015, the version of the Rules of Professional Conduct in effect prior to the January 1, 2015 amendments applies. The applicable version of Rule 1.7(b) provided "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to third person, or by the lawyer's own interests . . . ." All references in this opinion to Rule 1.7(b) shall be to the pre-January 1, 2015 version of the rule.

[4] Rule 3.4(c) provides "[a] lawyer shall not: . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . ."

[5] Rule 8.4(b) provides "[i]t is professional misconduct for a lawyer to: . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

[6] Rule 8.4(d) provide "[i]t is professional misconduct for a lawyer to: . . . engage in conduct that is prejudicial to the administration of justice."

## D.    *Discovery and Expert Testimony*

During the course of discovery, Mr. Plants retained Robert H. Davis, Jr., who had previously served as his legal counsel, as an expert witness on the Rules of Professional Conduct. In an evidentiary deposition, Mr. Davis testified that Mr. Plants's conduct did not violate the West Virginia Rules of Professional Conduct. The ODC filed a pre-hearing motion in limine to preclude the expert testimony. The HPS denied the motion, concluding that "having reviewed the transcript in its entirety, [the HPS] will give said testimony such weight as the Hearing Panel Subcommittee members determine appropriate when making the recommended disposition to the Supreme Court of Appeals of West Virginia, pursuant to Rule 3.10 of the Rules of Disciplinary Procedure."

## E.    *Report of the Hearing Panel Subcommittee*

Following a lengthy hearing on May 19 and 20, 2016,[7] the HPS filed a report with this Court on September 19, 2016. Providing a detailed analysis of the testimony and other evidence presented at the hearing, the HPS concluded:

> The Hearing Panel finds that the Office of Disciplinary Counsel has proven by clear and convincing evidence that Respondent [Mr. Plants] violated Rules 1.7(b), 3.4(c), 8.4(b)

---

[7] In addition to Mr. Plants and Ms. Plants, the HPS heard testimony from Sergeant Matthew Adams, Sergeant Brian Hammontree, Sergeant Anthony Colagrasso, Paul Ellis, Melissa Foster-Bird, Dan Holstein, and Donald Morris. The testimony of Robert H. Davis, Jr. was offered by deposition.

11

and 8.4(d) of the Rules of Professional Conduct. By his behavior/conduct, which result[ed] in domestic battery charges being filed against him pursuant to West Virginia Code §61-2-28(a), while simultaneously serving as the Prosecuting Attorney of Kanawha County, West Virginia, a conflict of interest was created. Additionally, Respondent knowingly disobeyed an obligation under the rules of a tribunal when he knowingly violated the Domestic Violence Emergency Protective Order, entered on February 27, 2014, by communicating with Petitioner Allison Plants and their children outside of the Fruth Pharmacy in Charleston, West Virginia, on or about March 17, 2014. He did so without asserting that no valid obligation existed for him to follow the Protective Order. Finally, Respondent committed a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respects, and engaged in conduct prejudicial to the administration of justice when he knowingly violated the Domestic Violence Emergency Protective Order, entered on February 27, 2014, by communicating with Petitioner Allison Plants and their children outside of the Fruth Pharmacy in Charleston, West Virginia on or about March 17, 2014.

The HPS evaluated Mr. Plants's conduct in accordance with applicable standards to determine whether discipline should be imposed, including mitigating and aggravating factors, and concluded that he should be sanctioned with a public reprimand and with payment of the costs of these proceedings. As the HPS explained:

Accordingly, Respondent should be sanctioned for his misconduct. For the public to have confidence in our State's disciplinary and legal systems, lawyers who engage in the type of conduct exhibited by Respondent must be sanctioned, pursuant to Rules 3.15 of the Rules of Lawyer Disciplinary Procedure in the form of a Public Reprimand. Such a sanction is also necessary to deter other lawyers from engaging in similar conduct and to restore the faith of the general public in the integrity of the legal profession. Although Respondent's lack of disciplinary history and his

12

removal from his position as the elected Prosecuting Attorney of Kanawha County, West Virginia, are mitigating factors, as is the fact that the criminal charges against him were dismissed, it must be remembered that Respondent, as the elected Prosecuting Attorney, was held to a higher standard. Therefore, especially under the facts herein, the ethical violations he commits are considered more egregious because of the betrayal of the public trust attached to the office. Importantly, despite the fact that Respondent held public office at the time of the incidents in question and, as such, may be held to a higher standard in these proceedings, the sanctions imposed must be justified by the conduct of Respondent, rather than linked to any publicity the matter may have received.

## II. STANDARD OF REVIEW

We review lawyer disciplinary proceedings using the following standards:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgement. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). We have determined that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions, or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics*

13

*v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984). We are mindful of the multiple considerations in these cases:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. Pt. 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987). With respect to public confidence in the ethical standards of the legal profession and public officials, in particular, we have emphasized that "[e]thical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." Syl. Pt. 3*, Committee on Legal Ethics of West Virginia State Bar v. Roark*, 181W.Va. 260, 382 S.E.2d 313 (1989).

Applying these standards, we turn to the case before us.

### III. DISCUSSION

The ODC urges this Court to impose a harsher sanction than public reprimand in this lawyer disciplinary matter but takes no other issue with the findings of fact and conclusions of law of the HPS. According to the ODC, Mr. Plants's conduct warrants a stronger sanction to send a clear message that when an elected prosecuting attorney engages in conduct that results in a conflict of interest and knowingly violates

14

the terms of a court order, this Court will suspend that prosecutor's license because such conduct violates the public trust in the very official elected to enforce the law. The ODC urges this Court to impose a three-month suspension of Mr. Plants's law license.

Mr. Plants consented to the sanction of public reprimand and costs recommended by the HPS.[8]

In considering the ODC's challenge to the HPS's recommended sanctions, we rely upon Syllabus Point 4 of *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998):

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the [West Virginia Supreme Court of Appeals] or [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct;

---

[8] While Mr. Plants consented to the sanction, he takes issue in his brief with the HPS's conclusions regarding conflict of interest and knowing violation of a court order. However, Mr. Plants did not file an objection as required by Rule 3.11 of the Rules of Lawyer Disciplinary Procedure to raise these issues before this Court. Accordingly, we decline to consider them. However, we consider individual facts in the record relating to the issues raised by Mr. Plants in the context of the appropriate sanction, which is the issue before us.

and (4) the existence of any aggravating or mitigating factors."

*Id.* at 497, 513 S.E.2d at 724, syl. pt. 4.

In a detailed analysis of the first three *Jordan* factors, the HPS found that Mr. Plants's conduct resulting in the domestic battery charges created an unwaivable conflict of interest violating his duty to his client, the citizens of Kanawha County, and the public and the legal system. The HPS also determined that Mr. Plants knowingly violated the Emergency Protective Order. The HPS further concluded that Mr. Plants's misconduct created actual and potential injury to the public, the legal system and the legal profession.

With regard to the fourth *Jordan* factor, we have explained that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Board v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003). We consistently have described mitigating factors as follows:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or

16

impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.* at 210, 579 S.E.2d at 551, syl. pt. 3.[9]  In contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." *Id.*, syl. pt. 4.

In this case, the HPS found three mitigating factors:  (1) Mr. Plants did not have a prior disciplinary record; (2) Mr. Plants had been removed from office as the elected Prosecuting Attorney of Kanawha County; and (3) the magistrate court dismissed the misdemeanor criminal complaints against Mr. Plants.  The HPS also found one aggravating factor:  Mr. Plants refused to acknowledge his wrongful conduct when he maintained that he did not commit a crime by speaking with his children in violation of the Emergency Protective Order.  Taking into account these mitigating and aggravating factors, the HPS recommended that Mr. Plants be publicly reprimanded.

---

[9] In *Scott*, we adopted the mitigating factors proposed by the American Bar Association in its *Standards for Imposing Lawyer Sanctions*. *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. at 214, 579 S.E.2d at 555.  We noted, however, that these mitigating factors are not to the exclusion of others that a particular case may present.  *Id*. at 214 n.33, 579 S.E.2d at 555 n.33.

Notwithstanding the HPS's findings, the ODC maintains that a three-month suspension is more appropriate. The ODC notes that this Court has routinely suspended prosecutors for misconduct. However, the sanctions we have imposed in cases involving prosecuting attorneys have ranged from outright dismissal of the charges to three-year suspensions and annulment. For example, in *Lawyer Disciplinary Board v. Jarrell*, 206 W.Va. 236, 523 S.E.2d 552 (1999), we dismissed the charges filed against a county prosecutor based upon extraordinary mitigating circumstances. We determined that while ethical violations occurred in some of the counts charged, none involved criminal conduct, the attorney was inexperienced in criminal law and lacked advisors, no harm or prejudice resulted to anyone, and the prosecutor chose not to run for office again. *Id.* at 244, 523 S.E.2d at 560.

Notably, in *Lawyer Disciplinary Board v. Sims*, 212 W.Va. 463, 468, 574 S.E.2d 795, 800 (2002), we declined to accept a recommendation to suspend for ninety days a prosecutor who had already been removed from office. In that case, we stated that "removal of a lawyer from an elected office is an effective, dramatic, and powerful punishment which serves as a 'deterrent to other members of the Bar.'" *Id.* at 468, 574 S.E.2d at 800. After concluding that Sims's removal from office as prosecuting attorney for his conduct must "in fairness be considered a mitigating factor," we further stated that "[f]orfeiture of a public office and removal therefrom is a harsh and drastic sanction indeed." *Id.* at 469, 574 S.E.2d at 801. In *Sims*, we concluded that "under all the

18

circumstances of this case, including the fact that Mr. Sims was removed from office, a public reprimand and payment of the costs incurred in this proceeding are appropriate and adequate sanctions." *Id.*

On the other hand, in *Committee on Legal Ethics of the West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989), we suspended a mayor and former county prosecutor's license for three years based upon his criminal conduct while in office. After a federal indictment on thirty criminal charges, Mr. Roark pled guilty to six counts of felony misdemeanor possession of cocaine, resigned from office as mayor of the City of Charleston, served 179 days in federal prison, served three years of probation and paid a $5,000 fine. *Id.* at 262 n.2, 382 S.E.2d at 315 n.2. In these circumstances, we held "[e]thical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." *Id.* at 260, 382 S.E.2d at 313, syl. pt. 3. *See also, Lawyer Disciplinary Board v. Busch*, 233 W.Va. 43, 754 S.E.2d 729 (2014) (license of prosecuting attorney who failed to cooperate with opposing counsel, lied to circuit court, and avoided giving up exculpatory evidence suspended for three years); *Lawyer Disciplinary Board v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003) (prosecuting attorney's license suspended for three years based upon ethical violations of dishonesty for lying in and out of court and falsifying court documents); *Committee on Legal Ethics of the West Virginia State Bar v. White*, 189 W.Va. 135, 428 S.E.2d 556 (1993) (prosecutor's license suspended for two years based

19

on illicit drug use that led to federal investigation in which he pled guilty to possession of marijuana, cocaine and percocet); *Lawyer Disciplinary Bd. v. Clifton*, 236 W.Va. 362, 780 S.E.2d 628 (2015) (assistant prosecuting attorney's repeated sexual misconduct by using position of power over vulnerable women in criminal system resulted in annulment of law license).

Likewise, the sanctions imposed in our prior decisions involving other public officials have ranged from public reprimand to annulment, depending upon the conduct and aggravating and mitigating factors present in the particular case. *See In re Matter of Callaghan*, __ W.Va. __ , 796 S.E.2d 604 (2017) (law license of judge-elect suspended for two years for violating Rule 8.4(d) and engaging in conduct prejudicial to the administration of justice, along with other violations of Code of Judicial Conduct); *Lawyer Disciplinary Board v. Blyler*, 237 W.Va. 325, 787 S.E.2d 596 (2016) (law license of court appointed special commissioner suspended for sixty days for violation of rule requiring safekeeping of funds); *Lawyer Disciplinary Board v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) (public reprimand of Attorney General who violated ethics rule requiring client confidentiality); *Committee on Legal Ethics of the West Virginia State Bar v. Boettner*, 188 W.Va. 1, 422 S.E.2d 478 (1992) (license of former Senate President who pled guilty to willfully evading payment of federal taxes for failing to report payment of interest by a third person on a campaign loan suspended for three years); *Committee on Legal Ethics of the West Virginia State Bar v. Grubb*, 187 W.Va. 608, 420

20

S.E.2d 744 (1992) (license of inactive member of bar annulled after conviction in federal court of bribery of public official, mail fraud, conspiracy, witness tampering, obstruction of justice, RICO, and aiding and abetting); *Committee on Legal Ethics of the West Virginia State Bar v. Moore*, 186 W.Va. 127, 411 S.E. 2d 452 (1991) (law license of former governor who pled guilty to three federal felonies including obstruction of justice and Hobbs Act violation annulled).

As in all disciplinary cases, however, we remain mindful of our obligation to consider facts on a case-by-case basis in determining appropriate sanctions:

> In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

Syl. Pt. 2, *Committee on Legal Ethics of the West Virginia State Bar v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 428 (1976), overruled on other grounds by *Committee on Legal Ethics v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993).

As the final arbiters of the discipline to be imposed in this case, we know we must keep in mind our prior decisions involving public officials generally and prosecuting attorneys specifically and take into account our responsibility to consider not only appropriate punishment on a case-by-case basis, but also our goals of achieving a

21

deterrent effect and the restoration of public confidence in the ethical standards of the legal profession. Given the facts and circumstances of this case, we are not persuaded that suspending Mr. Plants would achieve the goal of holding him to a higher standard as a former prosecutor or would send a stronger message than a public reprimand.

In fact, we have previously analyzed the necessity for suspension and have concluded that in some circumstances this sanction is not necessary to punish the respondent appropriately or restore public confidence. For example, in *Lawyer Disciplinary Board v. Losch*, 219 W.Va. 316, 633 S.E.2d 261 (2006), we concluded, "[w]e believe that suspension from the practice of law and supervision for one year is not necessary for the purposes of punishment of the respondent or restoration of public confidence in the ethical standards of the legal profession." *Id.* at 320, 633 S.E.2d at 265. We see no reason why these same considerations could not arise in a case involving a public official. Moreover, we have applied this analysis of our prior decisions involving public officials as demonstrated above by the wide array of sanctions, many less than a three-month suspension. Moreover, in this specific case, the mitigating factors fully support the recommendation of the HPS.

The misdemeanor criminal charges against Mr. Plants were dismissed based upon his full compliance with the requirements of a pre-trial monitoring agreement. He accepted the ruling removing him from office as prosecuting attorney and did not extend those proceedings by filing an appeal. Finally, we note that he had no

22

prior disciplinary record. We agree with the HPS, which observed that "despite the fact that [Mr. Plants] held public office at the time of the incidents in question and, as such, may be held to a higher standard in these proceedings, the sanctions imposed must be justified by the conduct of Respondent, rather than linked to any publicity the matter may have received." The hearing record is replete with testimony regarding personal and political matters, the discussion of which would not serve our goals for this proceeding. We conclude that given Mr. Plants's circumstances as a former prosecutor and current sole practitioner, suspension would not serve as a greater punishment to him or deterrent to others than removal from office has already served.

Finally, with respect to the ODC's request that this Court address the HPS's admission of expert testimony on the issue of what conduct violates the West Virginia Rules of Professional Conduct, we find that the issue is moot. As Justice McHugh noted, "[t]he law on this point is well settled in West Virginia. 'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property are not properly cognizable by a court.'" *State ex rel. Durkin v. Neely*, 166 W.Va. 553, 556, 276 S.E.2d 311, 313 (1981) (citing, *inter alia*, Syl. Pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908)). *See also,* Syl. Pt. 4 *Cline v. Mirandy*, 234 W.Va. 427, 765 S.E.2d 583 (2014).

In this case, while the HPS ruled in a pre-hearing motion that the deposition testimony could be offered into evidence at the disciplinary hearing, the HPS ultimately

gave no weight whatsoever to Mr. Davis's opinions in its report to this Court. Since we have adopted the HPS's recommended sanction of public reprimand without modification in this proceeding, the HPS's admission of the testimony of Robert M. Davis, Jr. is moot. Consideration of its admissibility at the hearing below would avail nothing in the determination of the appropriate sanction to be imposed upon Mr. Plants, which is the only issue before us. *See, e.g., U.S. v. Bernard*, 757 F2d 1439 (4th Cir. 1985) (expert testimony not relied upon by jury in arriving at its verdict on an unrelated charge; therefore, issue of admissibility of expert's testimony on appeal of conviction on unrelated charge is moot).

## IV. CONCLUSION

Based upon the foregoing, we impose the following sanctions pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure: (1) Public reprimand of Mr. Plants; and (2) order that Mr. Plants reimburse the Lawyer Disciplinary Board the costs of the proceedings on the formal statement of charges.

Public Reprimand and Costs.